HUBBARD, Admr., Appellant,

v.

LAURELWOOD HOSPITAL et al., Appellees.

[Cite as *Hubbard v. Laurelwood Hosp.* (1993), 85 Ohio App.3d 607.]

Court of Appeals of Ohio,
Lake County.

No. 92–L–032.

Decided March 16, 1993.

608

*James L. Hardiman* and *David W. Whitaker,* for appellant.

*M. Mark Jones* and *Daniel S. Cody,* for appellee Laurelwood Hospital.

*Nancy F. Zavelson* and *Peter W. Marmaros,* for appellee Lake West Hospital.

CHRISTLEY, Judge.

Appellant, Ronald E. Hubbard, the administrator of Juanita Miller's estate and brother of the decedent, is appealing the granting of appellees' motion for reconsideration and summary judgment to appellees, Laurelwood Hospital ("Laurelwood") and Lake West Hospital ("Lake West").

On June 4, 1991, appellant filed a complaint alleging medical malpractice, wrongful death, pain and suffering and loss of companionship and services. In that complaint, appellant alleged that appellant's decedent, Juanita Miller, had been treated for various psychiatric problems at Laurelwood. On June 5, 1990, the decedent was taken to Lake West's emergency room for mental problems and suicidal tendencies. Laurelwood was contacted for assistance in evaluating whether the decedent should be admitted as a psychiatric patient. The decedent was evaluated by an employee of Laurelwood. Appellant further alleged that the decedent signed a document purporting to be a contract agreement in which she agreed not to attempt suicide. The decedent was not admitted as a psychiatric patient.

The complaint further alleged that the decedent attempted suicide by setting herself on fire on June 9, 1990. Suffering from extensive burns over seventy percent of her body, the decedent died on June 23, 1990.

The thrust of the complaint was that in light of the decedent's prior mental condition, appellees owed the decedent a duty to provide appropriate psychiatric treatment, and appellees' decision not to admit her constituted a breach of said duty, proximately causing her death.

The first count was a medical malpractice claim. The second count was for wrongful death and realleged the allegations of the entire malpractice count as its basis. The third count was another survivorship claim, this time for the decedent's pain and suffering, realleging both the malpractice claim in its entirety as the basis for the pain and suffering claim. The fourth count was the derivative claim for loss of consortium, etc. Again the basis for the fourth count was the reallegation of the malpractice claim.

Both appellees timely filed answers to the complaint; Lake West on July 1, 1991, and Laurelwood on July 9, 1991.

On October 23, 1991, Laurelwood filed a motion for summary judgment, or in the alternative, a motion to dismiss based on appellant's failure to produce expert medical testimony critical of appellee's care, i.e., appellant failed to meet the jurisdictional requirements of R.C. 2307.42. Subsequently, Lake West filed a similar motion on October 30, 1991. In both of these motions, appellees stated that appellant failed to answer their respective discovery requests.

On November 22, 1991, appellant filed a brief in opposition to the motions for summary judgment/motion to dismiss. In that brief, appellant practically conceded the malpractice claim. Appellant only argued against the motion for summary judgment regarding the wrongful death claim.

On December 30, 1991, the trial court filed a judgment entry finding that appellant failed to timely file an affidavit complying with either R.C. 2307.-42(C)(1)(a) or (C)(2)(a). Thus, the trial court concluded that it was without jurisdiction to adjudicate the medical malpractice claim and, as a result, it dismissed only that claim.

On January 10, 1992, Laurelwood filed a motion for reconsideration regarding appellant's wrongful death cause of action. In that motion, Laurelwood alleged that appellant had refused to provide any response to its discovery requests. On January 14, 1992, Lake West joined in that motion. Appellant did not file a response or objection of any kind to either of the motions for reconsideration.

On January 30, 1992, sixteen days after the second motion for reconsideration was filed, the trial court granted both the motions for reconsideration and as well as for summary judgment as to Count II, the wrongful death claim, based on *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274.

Appellant is appealing that judgment, raising one assignment of error:

"The trial court erred and abused its discretion when it granted appellee's motion for reconsideration and granted summary judgment as to appellant's cause of action for wrongful death."

Appellant alleges that the trial court erred in granting summary judgment on his wrongful death claim. In his brief, appellant raises two separate issues.

First, appellant argues that the original motions for summary judgment/dismissal were devoid of any reference to the wrongful death claim.

Second, appellant claims that it is not necessary to have a medical expert in order to allege a wrongful death claim.

As to the first argument, a review of appellees' motions for summary judgment/motion to dismiss does not find any specific language regarding the wrongful death claim, however, there is broad language requesting the complaint *in its entirety* be dismissed.

Specifically, Laurelwood, in its October 23, 1991 motion for summary judgment/dismissal requested an order "granting [Laurelwood] summary judgment on the [appellant's] Complaint. The [appellee] avers that there is no genuine issue of material fact and they [*sic*] are entitled to judgment as a matter of law."

Likewise, Lake West requested the same relief in its original October 30, 1991 motion for summary judgment/motion to dismiss.

Additionally, appellees contend in these dual motions that appellant failed to answer their requests for production of documents and interrogatories. Neither appellee attached any evidentiary materials to its motions; rather each stated that it was "under no obligation to set forth facts negating the bare allegations in the Complaint" citing *Celotex*.

*Celotex* has been embraced by the Ohio Supreme Court. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798. In fact, the Ohio Supreme Court interpreted *Celotex* to mean that a moving party did not have to support its motions with affidavits or other evidentiary materials negating the nonmoving party's claim. *Mitseff, supra*, at 114, 526 N.E.2d at 800. In other words, the *Mitseff* court determined that a defendant moving for summary judgment did not need to present any affirmative evidence negating any element of the plaintiff's claim.

In the Ohio Supreme Court's later holding in *Wing*, the court affirmed a trial court's determination that a plaintiff's failure to present any evidentiary materials, by itself, constituted grounds for granting defendant's motion for summary judgment.

"A motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial." *Wing, supra*, 59 Ohio St.3d at 111, 570 N.E.2d at 1099.

█ A defendant need now only inform the court in his motion for summary judgment that plaintiff has had an adequate time for discovery and has failed to produce any evidence in support of an element of the claim. At this point, a plaintiff must present some Civ.R. 56 evidentiary materials in support of those issues for which he ultimately has the burden at trial. See *Bade v. Gen. Motors Corp.* (Dec. 20, 1991), Geauga App. No. 90–G–1599, unreported, 1991 WL 274499.

█ As previously stated, appellant did, in fact, treat those original motions as ones for summary judgment because he did submit affidavits in his original response.

More important, the motions for reconsideration were clearly meant to convince the court that dismissal of the wrongful death claim should have been granted under the original motions for summary judgment/dismissal.

It is apparent that appellant also believed that the original motions went to both his medical malpractice claim and his wrongful death claim, because he addressed both claims in his brief in opposition to the motions of summary

judgment and motions to dismiss filed on November 22, 1991. Since appellant addressed the wrongful death claim in his response and treated the original motions as ones for summary judgment, it is difficult to see how he was prejudiced.

Nevertheless, when the motions for reconsideration were subsequently ruled on by the court, it is arguable that appellant could have raised an issue as to whether he received proper notice that the trial court was now considering the original motions as ones for summary judgment. The law is clear that a trial court must notify all parties that it is treating a motion to dismiss as one for summary judgment at least fourteen days before the time fixed for hearing. *Federated Dept. Stores, Inc. v. Lindley* (1987), 30 Ohio St.3d 135, 30 OBR 447, 507 N.E.2d 1114, at syllabus. The rationale behind the notice is to give a party an opportunity to present pertinent materials that are only relevant to a motion for summary judgment as opposed to one for dismissal. *Id.* at 137, 30 OBR at 448–449, 507 N.E.2d at 1116.

There is no record that any notice was sent by the trial court to appellant after the motion for reconsideration was filed.

Nevertheless, as indicated above, we do not see how appellant was prejudiced, since he did treat the original motions as ones for summary judgment and he did submit affidavits.

■ Moreover, appellant failed to raise the notice argument on appeal. A court of appeals need only pass upon errors assigned and briefed; errors not specifically raised may be disregarded. *Toledo's Great Eastern Shoppers City, Inc. v. Abde's Black Angus Steak House No. III, Inc.* (1986), 24 Ohio St.3d 198, 203, 24 OBR 426, 430, 494 N.E.2d 1101, 1105.

In those subsequent motions for reconsideration, appellees did make specific arguments regarding the wrongful death claim, although there was still no evidentiary material attached to either of appellees' motions.

Appellant made no response to these motions for reconsideration, apparently intending to rely on the two affidavits previously submitted in response to the original motions for summary/dismissal. Those affidavits included the affidavit of the decedent's mother and the affidavit of appellant, the brother of the decedent and administrator of the decedent's estate. Neither of the affidavits established the necessary prima facie case.

■ Since appellant failed to bring forth in either response any evidence supporting his wrongful death claim, the trial court did not err in granting appellees' motions for reconsideration of the original motions for summary judgment.

Appellant's second argument, as to why summary judgment was inappropriate, contends that in this wrongful death claim it was not necessary to have a medical expert.

We first note that this is a "johnny come lately" argument. Appellant did not make this argument until appellees had filed their motions for summary judgment. When the complaint was originally filed, appellant filed it with an affidavit comporting with R.C. 2309.01(C)(1)(b), *i.e.*, the attorney's affidavit stating that he had not been able to obtain an expert consultation regarding the malpractice claim.

■ If appellant were also relying on *res ipsa loquitur*, appellant's attorney needed to file an additional affidavit stating that the claimant intended to rely solely on that theory. R.C. 2307.42(C)(1)(d)(i). No such affidavit was ever filed. Thus, appellant failed to comply with the dictates of R.C. 2307.42(C)(1)(d)(i) and, therefore, failed to make the required prima facie case concerning *res ipsa loquitur.*

■ R.C. 2125.01, the statute governing wrongful death claims, requires that the death be caused by a wrongful act, neglect or default of a defendant which would have entitled the decedent to maintain an action and recover damages had the death not ensued. To maintain a wrongful death action on a theory of negligence or malpractice, a plaintiff must demonstrate that:

"(1) the existence of a duty owing to plaintiff's decedent, (2) a breach of that duty, and (3) proximate causation between the breach of duty and the death." *Littleton v. Good Samaritan Hosp. & Health Ctr.* (1988), 39 Ohio St.3d 86, 92, 529 N.E.2d 449, 454.

In *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673, at paragraph one of the syllabus, the Ohio Supreme Court set forth the following test for an action in medical malpractice:

"In order to establish medical malpractice, it must be shown by a preponderance of evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct and proximate result of such doing or failing to do some one or more of such particular things."

■ The Supreme Court supplemented this with the "professional judgment rule" in *Littleton, supra.* The professional judgment rule is to be used when standards cannot be determined. *Jenks v. West Carrollton* (1989), 58 Ohio

App.3d 33, 38, 567 N.E.2d 1338, 1343. The professional judgment rule recognizes that psychiatric evaluations and treatment plans are very difficult. Liability in such cases only arises in the absence of good faith or failure to exercise professional judgment. *Littleton* and *Jenks, supra.*

■ Because psychiatric questions are so difficult to understand, we do not accept appellant's argument that the lack of care in this case is so apparent that it only requires common knowledge and experience of a layperson to understand and judge. It may very well be that the making of a "contract" not to commit suicide is an accepted means of therapy for dealing with potential suicide patients.

■ The general rule for determining whether a physician or surgeon has fallen below the requisite standard of care and skill is that expert medical testimony is required. *Bruni, supra,* 46 Ohio St.2d at 130, 75 O.O.2d at 186, 346 N.E.2d at 676–677. We find the general rule to be applicable here. Thus, appellant needed to produce expert testimony to support his malpractice claim, the stated basis for the wrongful death action.

" * * * [T]he issue of causal connection between an injury and a specific subsequent physical disability involves a scientific inquiry and must be established by the opinion of medical witnesses competent to express such opinion. In the absence of such medical opinion, it is error to refuse to withdraw that issue from the consideration of the jury." *Darnell v. Eastman* (1970), 23 Ohio St.2d 13, 52 O.O.2d 76, 261 N.E.2d 114, syllabus.

Under the current status of the law, summary judgment is properly granted where the party who bears the burden of proof at trial fails to provide evidential materials going to the existence of an element essential to the party's case. *Wing, supra;* Civ.R. 56. Once a motion for summary judgment is made, a party may not rest upon the mere allegations in his complaint. Civ.R. 56(E).

In the present case, appellant had done just that. He failed to produce any *independent* evidence to support his wrongful death claim, but instead, rested solely on the reallegation of the malpractice count in his complaint.

In light of *Wing,* appellant was required to attach affidavits or other evidentiary materials to establish that appellees had not complied with the requisite standard of care. Cf. *Hoffman v. Davidson* (1987), 31 Ohio St.3d 60, 62, 31 OBR 165, 167, 508 N.E.2d 958, 960.

Appellant needed to set forth specific facts showing that there was a genuine issue of operative fact, *i.e.,* affidavits or some evidence to support plaintiff's claims. *Id.* at 61, 31 OBR at 166–167, 508 N.E.2d at 959–960. (The affidavits of appellant and the decedent's mother did not go to the operative facts of the case.)

Therefore, absent the prerequisite presence of a negligence claim (the malpractice claim), the trial court did not err in granting summary judgment in the wrongful death complaint. In other words, appellant's own pleadings established that the malpractice allegation was the sole basis of, and was incorporated into, the wrongful death count. Thus, when the malpractice failed, the wrongful death count failed.

Finally, we note that the two orders that terminated this case (the December 30, 1991 judgment entry specifically dismissing the medical malpractice claim and the January 30, 1992 order granting summary judgment as to the wrongful death claim) do not expressly address the pain and suffering claim or the derivative loss of companionship claims.

For the same reasons just expressed above regarding the wrongful death action, the pain and suffering claim and the loss of companionship claims are also rendered moot. Under other facts, this might not be the case. However in the instant appeal, both of these counts in the original complaint also reallege the entire malpractice claim as the *sole* basis for liability for each count. Thus, when the malpractice was dismissed, each of these claims lost a vital element.

In other words, under these facts, the dismissal of the medical malpractice claim rendered the pain and suffering claim and the loss of companionship claim moot, even though those claims were not specifically addressed by the trial court. *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.* (1989), 44 Ohio St.3d 17, 21, 540 N.E.2d 266, 270; *Harleysville Mut. Ins. Co. v. Santora* (1982), 3 Ohio App.3d 257, 3 OBR 289, 444 N.E.2d 1076.

Each of the counts in appellant's complaint alleged that malpractice was the stated wrongful act claimed in that count. When malpractice was eliminated on jurisdictional grounds, appellant's entire complaint was mooted out as all other counts had been incorporated and were dependent on the malpractice claim.

Appellant's assignment is without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

FORD, P.J., and NADER, J., concur.