FREEMAN, Admr., Appellant,

v.

CLEVELAND CLINIC FOUNDATION, Appellee.

[Cite as *Freeman v. Cleveland Clinic Found.* (1998), 127 Ohio App.3d 378.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 71426.

Decided April 27, 1998.

380

*Arthur L. Clements III*, for appellant.

*Reminger & Reminger, Richard C. Haber* and *Brian D. Sullivan,* for appellee.

MICHAEL J. CORRIGAN, Judge.

Walter Freeman III, administrator of the estate of Walter Freeman IV, plaintiff-appellant, appeals from the judgment of the Cuyahoga County Court of Common Pleas, General Division, case No. CV–290886, in which the trial court granted the summary judgment motion of the Cleveland Clinic Foundation, defendant-appellee. Appellant assigns three errors for this court's review.

Appellant's appeal is not well taken.

Walter Freeman IV, plaintiff-appellant's son ("the decedent"), graduated from Richmond Heights High School in May 1986. While attending high school, the decedent was a member of the National Honor Society during his junior year and was an active participant in basketball, football, and track. Upon graduation, the decedent enrolled at Oberlin College, where he had received a grant in aid to play basketball.

On August 8, 1986, the decedent was involved in an automobile accident, wherein his vehicle was struck by an uninsured hit-skip motorist. As a result, the decedent sustained injuries to both knees. After receiving emergency treatment at Hillcrest Hospital, the decedent began treating with Dr. Creightan Heyl, an orthopedic surgeon at Richmond Heights Hospital. Dr. Heyl's treatment consisted of medication and conservative physical therapy.

The decedent began classes at Oberlin College in September 1986. Once basketball practice began, it was readily apparent that the decedent was unable to play on the level he had previously attained due to the injury to his knees. Consequently, the decedent played sparingly during that season.

On June 10, 1987, the decedent began treating with Dr. John Bergfeld, an orthopedic surgeon and the head of the Cleveland Clinic's sports medicine section in the department of orthopedic surgery. After additional physical therapy failed to produce the necessary results, Dr. Bergfeld recommended acentric exercise, medication, and use of an orthotic insert. This treatment was unsuccessful, and the decedent quit the Oberlin basketball program. Eventually, the decedent withdrew from Oberlin College at the end of his sophomore year.

The following year, the decedent enrolled at Cleveland State University. During this time period, the decedent's grades were poor. Appellant noticed a marked change in the decedent's personality, and the decedent began to pay less attention to his overall physical appearance and personal hygiene.

The decedent experienced continued pain in both knees. As a result, Dr. Bergfeld recommended that the decedent undergo a bilateral patella release

surgery in order to relieve the pain. Dr. Bergfeld performed the operation on August 14, 1990. The decedent received followup treatment at Cleveland Clinic through the spring of 1991.

On April 8, 1991, appellant and the decedent met with Dr. Bergfeld at the Cleveland Clinic. At this time, Dr. Bergfeld told appellant and the decedent that, in his opinion, the decedent had received the maximum benefit of surgery and physical therapy and that he would not benefit from further treatment. Dr. Bergfeld noted that he would continue to treat the decedent's condition on a symptomatic basis.

In January 1990, the decedent had begun treating with a psychologist, Dr. Carl Weitman. The decedent met with Dr. Weitman approximately twenty-five times from July 1990 through his final visit on April 15, 1991. Dr. Bergfeld did not know that the decedent had been seeing a psychologist during this period.

On April 25, 1991, the decedent returned to Oberlin College to visit his ex-girlfriend. At this time, the decedent discovered her with another male at her residence. Later that day, the decedent obtained a handgun, drove to the Oberlin college gym, parked his automobile, and took his own life. A photograph of his ex-girlfriend was discovered in the automobile on the seat next to the decedent.

On June 12, 1995, appellant filed survival and wrongful death causes of action against the Cleveland Clinic Foundation.[1] Appellant maintained that Dr. John Bergfeld, an employee of the Cleveland Clinic, breached the standard of care for an orthopedic surgeon by failing to refer the decedent to a pain management clinic, psychologist, or psychiatrist after determining that the decedent would not benefit from additional surgery or physical therapy. Appellant maintained further that, as a result of Dr. Bergfeld's failure, the decedent committed suicide. The Cleveland Clinic filed its answer on June 23, 1995, denying all substantive allegations raised in the complaint. On July 6, 1995, a counterclaim was filed against appellant for unpaid medical expenses incurred by the Cleveland Clinic in treating the decedent.

On November 14, 1995, appellant noticed Dr. Garron Weiker, Director of the Clinic's orthopedic residency program, for deposition. Along with the notice of deposition, appellant requested certain documents from the Cleveland Clinic regarding surgical standards for orthopedic surgeons. On November 20, 1995, the Cleveland Clinic filed a motion for a protective order to prevent Dr. Weiker's deposition from going forward. The Cleveland Clinic maintained that a protective order was necessary, since Dr. Weiker did not treat decedent nor did he ever

---

1. Appellant originally filed this action on September 24, 1992, but voluntarily dismissed the complaint pursuant to Civ.R. 41(A) on April 28, 1995.

personally examine any records relevant to this matter. Consequently, appellant filed a corresponding motion to compel discovery of the requested documents.

On January 12, 1996, the trial court granted the Cleveland Clinic's motion for a protective order and denied appellant's motion to compel discovery. Subsequently, appellant moved for reconsideration on the issue, and the trial court conducted oral argument on the motion. On March 21, 1996, the trial court affirmed its original decision granting the protective order precluding Dr. Weiker's deposition.

On May 1, 1996, the Cleveland Clinic moved for summary judgment on appellant's complaint, arguing that no genuine issue of material fact existed and that it was entitled to judgment as a matter of law.

On August 20, 1996 and August 21, 1996, appellant filed a brief in opposition and a revised brief in opposition to the Cleveland Clinic's summary judgment motion.

On September 9, 1996, appellant moved for leave to file a second amended complaint pursuant to Civ.R. 15(B).

On September 13, 1996, the trial court conducted the final pretrial in this case, at which time the trial court denied appellant's motion for leave to amend the complaint and granted the motion for summary judgment of the Cleveland Clinic.

On October 15, 1996, appellant filed a timely notice of appeal from the judgement of the trial court. The instant appeal now follows.

Appellant's first assignment of error states:

"I. The trial court erred in granting the appellee's motion for summary judgment."

Appellant argues, through his first assignment of error, that the trial court improperly granted summary judgment in favor of the Cleveland Clinic Foundation, defendant-appellee. Specifically, appellant maintains that there were genuine issues of material fact regarding the applicable standard of care, Dr. Bergfeld's alleged breach of that standard, and the proximate cause of the decedent's suicide. It is appellant's position that, by taking away any hope of recovery and failing to provide alternative pain management or psychological care, Dr. Bergfeld negligently caused and/or contributed to decedent's death.

The standard for granting a motion for summary judgment is set forth under Civ.R. 56(C). In applying this rule, the Ohio Supreme Court has consistently held that, before such a motion can be granted, the moving party must demonstrate that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most

strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 667 N.E.2d 1197; *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 617 N.E.2d 1129.

A motion for summary judgment forces the nonmoving party to produce evidence on issues for which that party bears the burden of productions at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, syllabus. The nonmovant must also present specific facts and may not rely merely upon the pleadings or upon unsupported allegations. *Shaw v. J. Pollock & Co.* (1992), 82 Ohio App.3d 656, 612 N.E.2d 1295. When a party moves for summary judgment supported by evidentiary material of the type and character set forth in Civ.R. 56(E), the opposing party has a duty to submit affidavits or other material permitted by Civ.R. 56(C) to show that there is a genuine issue for trial. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the Ohio Supreme Court recently discussed the proper standard to be applied when reviewing summary judgment motions. The court stated as follows:

"Again, we note that there is no requirement in Civ.R. 56 that any party submit affidavits to support a motion for summary judgment. See, *e.g.,* Civ.R. 56(A) and (B). There is a requirement, however, that a moving party, in support of a summary judgment motion, specifically point to something in the record that comports with the evidentiary materials set forth in Civ.R. 56(C)."

■ This court's analysis of an appeal from a summary judgment is conducted under a de novo standard of review. See *Maust v. Bank One Columbus, N.A.* (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765, 767–768; ·*Howard v. Wills* (1991), 77 Ohio App.3d 133, 601 N.E.2d 515. No deference is given to the decision under review, and this court applies the same test as the trial court. *Bank One of Portsmouth v. Weber* (Aug. 7, 1991), Scioto App. No. 1920, unreported, 1991 WL 156416.

In *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673, at paragraph one of the syllabus, the Ohio Supreme Court set forth the following test for a claim of medical malpractice:

"In order to establish medical malpractice, it must be shown by a preponderance of evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and

circumstances, and that the injury complained of was the direct and proximate result of such doing or failing to do some one or more of such particular things."

The Supreme Court supplemented this standard with the "professional judgment rule" in *Littleton v. Good Samaritan Hosp. & Health Ctr.* (1988), 39 Ohio St.3d 86, 92, 529 N.E.2d 449, 454, in which it was determined that, due to the inherent difficulty in psychiatric evaluations and treatment plans, a psychiatrist or other provider is not required to assume the risk of improper treatment. Under the rule, grounds for liability, including premature discharge and failure to warn, can be a basis for liability only in the absence of good faith or a failure to exercise professional judgment. See *Jenks v. W. Carrollton* (1989), 58 Ohio App.3d 33, 38, 567 N.E.2d 1338, 1343–1344; *Hubbard v. Laurelwood Hosp.* (1993), 85 Ohio App.3d 607, 620 N.E.2d 895.

R.C. 2125.01, Ohio's wrongful death statute, requires that the death be caused by a wrongful act, neglect, or default of a defendant that would have entitled the decedent to maintain an action and recover damages had the death not ensued. In order to maintain a wrongful death action on a theory of negligence or malpractice, a plaintiff must demonstrate (1) the existence of a duty owing to plaintiff's decedent, (2) a breach of that duty, and (3) proximate causation between the breach of duty and the death. *Littleton, supra*, at 92, 529 N.E.2d at 454–455.

In the case *sub judice*, appellant maintains that Dr. Bergfeld, a Cleveland Clinic employee, failed to meet the standard of care of a medical health professional by improperly failing to refer the decedent to a mental health professional or pain management clinic upon completion of physical therapy. In so doing, appellant argues that Dr. Bergfeld left the decedent with no hope of recovery, thereby negligently causing or contributing to the cause of decedent's suicide. There is no allegation anywhere in the record that Dr. Bergfeld, an orthopedic surgeon, negligently diagnosed the decedent's knee problems, negligently performed surgery, or prescribed improper physical therapy.

Applying the professional-judgment rule to the underlying facts, it is apparent that appellant did not establish that Dr. Bergfeld's actions were done in the absence of good faith or that Dr. Bergfeld failed to exercise his professional judgment in treating the decedent. While it is true that the decedent exhibited certain behavioral and personality changes during the time he was under Dr. Bergfeld's care, at no time did the decedent give any indication that he was contemplating violent injury to himself or ever mention suicide as an option. Clearly, in the absence of such evidence, this court cannot now say that Dr. Bergfeld breached a duty to the decedent by failing to refer him to a mental health or pain management professional. This is particularly true in light of the fact that Dr. Bergfeld's specialty was orthopedic surgery and there is no

allegation by appellant that Dr. Bergfeld's treatment of the decedent was orthopedically deficient. The Ohio Supreme Court has held that the law of medical negligence imposes upon physicians engaged in the practice of medicine a duty to employ that degree of skill, care, and diligence that a physician or surgeon of the same medical speciality would employ in like circumstances. *Berdyck v. Shinde* (1993), 66 Ohio St.3d 573, 579, 613 N.E.2d 1014, 1020–1021, citing *Bruni v. Tatsumi, supra.* Given the lack of a stated intent by the decedent regarding a possible suicide attempt, Dr. Bergfeld, an orthopedic surgeon, did not deviate from the degree of skill, care, and diligence that another orthopedic surgeon would have exercised in a similar situation.

■ In addition, a review of the record demonstrates that the decedent had been treating with a psychologist independently of Dr. Bergfeld for approximately one year before the suicide. This fact, combined with the circumstances of the decedent's death (*i.e.*, found with a picture of his ex-girlfriend in the automobile), further lessen the foreseeability regarding the issue of whether Dr. Bergfeld's failure to refer the decedent was the proximate cause of the decedent's suicide.

For the foregoing reasons, appellant's first assignment of error is not well taken.

Appellant's second assignment of error states:

"II. The trial court abused its discretion when it denied the appellant's Civ.R. 15(B) motion to amend the pleadings to conform to the evidence and proof regarding a claim for the loss of a less-than-even chance of recovery or survival."

■ Appellant argues, through his second assignment of error, that the trial court improperly denied his motion for leave to amend the complaint pursuant to Civ.R. 15(B). Specifically, appellant maintains that he should have been permitted to amend the pleadings to conform to the evidence and proof regarding a claim for the loss of a less-than-even chance of recovery or survival in light of the recent Ohio Supreme Court ruling in *Roberts v. Ohio Permanente Med. Group, Inc.* (1996), 76 Ohio St.3d 483, 668 N.E.2d 480, which allowed a plaintiff in Ohio to pursue such a claim once again by overruling its prior decision in *Cooper v. Sisters of Charity of Cincinnati, Inc.* (1971), 27 Ohio St.2d 242, 56 O.O.2d 146, 272 N.E.2d 97.

■ The Ohio Supreme Court has stated that Civ.R. 15(B) is to be liberally construed in an effort to decide cases on their merits. *Hall v. Bunn* (1984), 11 Ohio St.3d 118, 121, 11 OBR 417, 419–420, 464 N.E.2d 516, 519–520. Such liberality, however, is not limitless. *Fabry v. Kral* (Feb. 9, 1994), Summit App. No. 16320, unreported, at 3, 1994 WL 45737. A trial court's decision on a motion to amend a complaint is reviewed under an abuse-of-discretion standard. *Wilmington Steel Products, Inc. v. Cleveland Elec. Illum. Co.* (1991), 60 Ohio St.3d

120, 122, 573 N.E.2d 622, 624–625; *Northfield Park Assoc. v. Northeast Ohio Harness* (1987), 36 Ohio App.3d 14, 521 N.E.2d 466. An abuse of discretion connotes more than an error of law or judgment and implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 498, 506, 589 N.E.2d 24, 30–31. An abuse of discretion in this context is where the trial court denies "a motion, timely filed, seeking leave to file an amended complaint, where it is possible that plaintiff may state a claim upon which relief may be granted and no reason justifying denial of the motion is disclosed." *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 63 O.O.2d 262, 297 N.E.2d 113, paragraph six of the syllabus. The Supreme Court later stated in *Wilmington Steel Products, Inc., supra,* 60 Ohio St.3d at 122, 573 N.E.2d at 624–625, that a plaintiff cannot rely on *Peterson* where the motion is not timely filed or where the trial court gave other reasons for justifying denial of the motion. See *Hull v. Dietrich* (Dec. 31, 1997), Miami App. No. 97–CA–32, unreported, at 7, 1997 WL 797732.

■ In this case, appellant filed a motion for leave to file a second amended complaint and to continue trial on September 9, 1996. The final pretrial in this matter was scheduled for September 13, 1996, and the trial was scheduled for September 16, 1996. Clearly, the motion for leave to file a second amended complaint was not timely filed, as it was filed after discovery had been completed, after the dispositive motion deadline had passed, and one week prior to the scheduled trial date. Under the circumstances, this court finds that the trial court did not abuse its discretion by denying appellant's motion for leave to file a second amended complaint. See *Parente v. Embassy Suites, Inc.* (Sept. 4, 1997), Cuyahoga App. No. 71890, unreported, 1997 WL 547835. In addition, a review of appellant's motion for leave to file a second amended complaint reveals that appellant failed to demonstrate how the theory of diminished chance of recovery or survival applied to decedent's suicide. Without such a showing, the trial court was not required to permit a second amended pleading. See *Wilmington Steel Products, Inc., supra.*

For the foregoing reasons, appellant's second assignment of error is not well taken.

Appellant's third and final assignment of error states:

"III. The trial court abused its discretion when it granted the appellee's motion for a protective order whereby the appellant was precluded from taking Dr. Garron Weiker's deposition."

■ Appellant contends that the trial court impermissibly limited discovery by granting a protective order preventing Dr. Weiker's deposition where Dr. Weiker had relevant information regarding the Cleveland Clinic's compliance with the

accreditation counsel of Graduate Medical Education's residency accreditation requirements and the Cleveland Clinic's compliance with the licensing requirements set forth in Ohio Adm.Code 4731–18–01. Dr. Weiker was the director of the Clinic's orthopedic residency program at the time of decedent's treatment.

Civ.R. 26(B) provides in part:

"(B) Scope of discovery. Unless otherwise ordered by the court in accordance with these rules, the scope of discovery is as follows: `

"(1) In general. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action * * *. It is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

In order for discovery to be allowed, relevance to the underlying subject matter must be shown. 4 Moore's Federal Practice (1987–1988) 25–26, at 26–101. While the scope of relevance in discovery is broad, it is not limitless. In *Tschantz v. Ferguson* (1994), 97 Ohio App.3d 693, 715, 647 N.E.2d 507, 521, this court, in dealing with the scope of discovery, stated:

"Civ.R. 26(B)(1) grants broad discovery powers to parties. Although the rule limits the matter to be discovered to that which is 'relevant to the subject matter,' Civ.R. 26(B)(1) also provides for discovery of information 'reasonably calculated to lead to the discovery of admissible evidence.' The test for relevancy under Civ .R. 26(B)(1) 'is much broader than the test to be utilized at trial. It is only irrelevant by the discovery test when the information sought will not reasonably lead to the discovery of admissible evidence.' *Icenhower v. Icenhower* (Aug. 14, 1975), Franklin App. No. 75AP–93, unreported, at 2; see, also, *State ex rel. Fisher v. Rose Chevrolet* (1992), 82 Ohio App.3d 520, 523, 612 N.E.2d 782, 784."

Clearly, the trial court has inherent power to control discovery. Civ.R. 26(C); *State ex rel. Pfeiffer v. Common Pleas Court* (1968), 13 Ohio St.2d 133, 42 .O.O.2d 362, 235 N.E.2d 232; *State ex rel. Grandview Hosp. Ctr. v. Gorman* (1990), 51 Ohio St.3d 94, 554 N.E.2d 1297. This court will not second-guess a trial court's ruling on discovery issues in the absence of a showing of an abuse of discretion. *Baynard v. Oakwood* (Oct. 16, 1997), Cuyahoga App. No. 71711, unreported, at 7, 1997 WL 638807.

In the instant case, a review of the record demonstrates that the trial court did not abuse its discretion by granting the protective order prohibiting appellant from deposing Dr. Weiker. At no time did Dr. Weiker examine, treat, or diagnose any condition relating to the decedent while he was at the Cleveland

Clinic. In addition, Dr. Weiker never reviewed any of decedent's medical records and, therefore, had no personal knowledge regarding the underlying claim.

For the foregoing reasons, plaintiff-appellant's third and final assignment of error is not well taken.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

DYKE, P.J., and PATTON, J., concur.