JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal from an order of Judge Ann T. Mannen that granted summary judgment to appellees City of Cleveland ("City"), Michael White, Algeron "Al" Walker, and Myrna Branche on the breach of contract and defamation claims of appellant C. Douglas Thomas, pro se,[1] dba T Group Communications ("T Group"). He claims the judge failed to follow the standards required for a Civ.R. 56 determination and that he was improperly denied discovery. We affirm in part, reverse in part, and remand for further proceedings.
 {¶ 2} Thomas and the City were parties to a contract under which T Group was to provide "pre-sort mail services" in exchange for a yearly fee. The contract at issue, which covered the term from September 1, 1999 through August 31, 2000, contained a cancellation provision:
 {¶ 3} "The City shall have the right to cancel this contract on five (5) days written notice if, in the opinion the [sic] Commissioner of Purchases and Supplies, * * * the performance of work or services are not in accordance with contract specifications and the contractor fails to cure such deficiencies or comply with the contract specifications within ten days after receipt of notice of default from the City * * *."
 {¶ 4} On or about March 28 or March 29, 2000, an incident occurred at which Thomas either failed to arrive to pick up the City's mail or City officials informed him that he would no longer be allowed to pick it up. Thereafter, Thomas did not perform his obligations under the contract and Myrna Branche, the Commissioner of Purchases and Supplies, sought to notify him that he was in default under the contract and that he had ten days to cure the default. She sent letters to this effect on April 7, 2000, and again on May 10, 2000, but sent them to an address other than that stated in the parties' contract, and apparently received no response. On May 23, 2000, she sent another notice, this time to Thomas's correct address, which stated, inter alia:
 {¶ 5} "The City is hereby serving notice that T-Group Communications is in default of its contract with the City. Failure to respond to this letter within ten (10) work days will cause the cancellation of said contract on the basis of default. Please be notified that your contract will be canceled as of June 7, 2000 if you fail to respond to the Commissioner of Purchases Supplies before said date."
 {¶ 6} Thomas responded by letter on June 2, 2000, and stated that he considered the City to be in prior breach of the contract because of its actions on March 28 or March 29, 2000. On June 19, 2000, he filed a complaint alleging breach of contract, tortious interference with contract, and defamation, claiming that the City and its employees prevented him from performing under the contract and that City employees publicized false statements alleging that he mishandled the City's mail. He later amended the complaint to include former Cleveland Mayor Michael White as a party defendant, alleging that he instructed defendants Walker and Branche to cancel the contract and that all three were aware that they had no authority to do so.
 {¶ 7} The City objected to a number of Thomas's discovery requests and sought protective orders to avoid answering interrogatories or providing documents about its investigation into checks believed stolen from the mail and its contract with a different mail sorting service. It objected to Thomas's request to depose Mayor White on the basis that there was no indication that he had personal knowledge requiring his participation.
 {¶ 8} The judge granted a protective order for White and noted that Thomas had agreed to resolve other disputes by limiting his interrogatories and document requests to particular dates. It does not appear, however, that he submitted any narrowed requests by the discovery deadline.
 {¶ 9} Although the record is unclear, it appears that Thomas claimed he was unfairly targeted in the City's investigation of criminal behavior in its mail system and that, as a result of the investigation, the City or its employees informed him that he would no longer be allowed to perform mail sorting services. He asserted that the City attempted to show compliance with the contract's cancellation provisions only after barring him from his duties. He also alleged that unidentified City employees informed his other customers of allegations concerning his negligent or criminal mishandling of the City's mail.
 {¶ 10} In addition to his own testimony Thomas's allegations were chiefly supported by the deposition testimony of mailroom worker Delrick Briggs, who stated that in March of 2000 the City was investigating its employees concerning alleged thefts from the mailroom. He testified that on March 28, 2000, the T Group representative who came to pick up the mail was arrested,[2] and that Branche instructed him that T Group was no longer allowed to pick up any mail. When Thomas arrived to pick up the mail on March 29th, Briggs followed Branche's instruction and refused to let him do so, and noted that a different mail sorting service began picking up the mail within three days of the ban on T Group. Finally, Briggs stated that both Branche and Treasurer Al Walker told him that the order to ban T Group came directly from Mayor White.
 {¶ 11} The individual defendants moved for summary judgment claiming that they were not parties to the contract, that Thomas had failed to prove that any of them made defamatory statements, or that any defamatory statements were privileged because they were part of a criminal investigation. The City also moved for summary judgment, claiming that it properly notified Thomas of his default and canceled the contract after he ceased providing services. Summary judgment was granted to all defendants.
 {¶ 12} Thomas states three assignments of error. The third assignment, which we find dispositive, states:
 {¶ 13} "III. The Court Erred When it Granted a Summary Judgment That Did Not Meet the Standards and Requirements of Civil Rule 56."
 {¶ 14} We review the grant of summary judgment de novo, using the same standard as the trial judge.[3] The burden is on the moving party to show that there is no genuine dispute of fact and that it is entitled to judgment as a matter of law.[4] This standard can be met by showing that the non-moving party cannot present evidence on one or more elements of its claim.[5] Based upon this standard we can affirm the summary judgment in favor of the individual defendants because Thomas did not present sufficient evidence to sustain the elements of defamation or tortious interference.
 {¶ 15} To sustain a defamation claim, one must show, inter alia, that the defendants published a false defamatory statement.[6] Thomas failed to show not only that any of the named defendants made statements about him, he failed to show the substance of any statement or produce evidence that any false statement was made. Therefore, he cannot sustain a defamation action against any of the defendants.
 {¶ 16} Thomas's tortious interference claim also failed because he had no evidence that any of the individual defendants acted outside the scope of their employment or agency. Thomas's contract was with the City and its employees ordinarily are not considered third parties, for purposes of a tortious interference claim, unless there is evidence that they acted in their individual capacity.[7] Although Thomas made allegations of individual action, he did not produce evidence to support such a claim.
 {¶ 17} The only remaining cause of action is Thomas's claim against the City for breach of contract. The City claims that it properly notified him of his default and complied with the contract's cancellation provisions. We disagree for two reasons.
 {¶ 18} First, Thomas has raised a genuine dispute of fact concerning whether the City committed a prior breach by preventing him from performing under the contract. His non-performance would be excused if it was precipitated by the City's breach, and Thomas and Briggs both testified that the City barred T Group from picking up mail beginning March 28 or March 29, 2000. The City has presented no evidence showing that it did not stop Thomas from performing under the contract or that its conduct was justified or otherwise not in breach of its contract. Although it claims that Briggs' testimony concerning the order to ban Thomas is hearsay, this argument is misplaced. Briggs was perfectly capable of testifying that Branche instructed him not to allow Thomas to pick up the mail, because the instruction is not an assertion.[8] Briggs was also capable of testifying that he in fact prevented Thomas from picking up the mail. The City is correct in arguing that the testimony is hearsay with respect to White's involvement, but this does not affect Briggs' ability to testify about the instructions given directly to him or to his actions.
 {¶ 19} Second, there is a question concerning whether the City gave Thomas adequate notice and opportunity to cure before canceling the contract. Thomas testified that he understood the contract was canceled at the time he was barred from performing under it, and Briggs testified that another mail sorting service was performing T Group's services within three days of Thomas's ouster. Therefore, had Thomas received Branche's April 7, 2000 and May 10, 2000 notices of default, he could have believed that those letters were mere formalities and that he would not be allowed to continue performing even if he attempted to do so.
 {¶ 20} Moreover, the first two letters were sent to the wrong address and there is no evidence that Thomas received any notice other than the May 23, 2000 letter, which did not state that he would have any right to cure his alleged default, but stated only that the contract would be canceled if he failed to contact Branche within ten days. The contract required notice of default and an opportunity to cure followed by notice of cancellation, and there is a genuine dispute over whether Thomas received both notice of default and notice of cancellation. The third assignment of error is sustained with respect to the breach of contract claim against the City.
 {¶ 21} Thomas's first and second assignments state:
 {¶ 22} "I. The Trial Court Erred in Granting a Motion for Summary Judgment Without Considering the Non-moving Party Answers and All Appropriate Materials Filed in Opposition to the Motion.
 {¶ 23} "II. The Trial Court Abused Its Discretion When it Denied in Toto The Appellant [Sic] Use of The Ohio Civil Rules For Discovery in The Preparation of His Complaint And in Opposition to The Motion For Summary Judgment."
 {¶ 24} Because our disposition of the third assignment of error entailed de novo review of the entire record, we need not address the first assignment of error.[9] Under the second assignment Thomas complains that he was unfairly denied discovery when the judge granted protective orders preventing deposition of Michael White and allowing the defendants to avoid certain interrogatories and document requests. Nothing in the record suggests that White had knowledge relevant to Thomas's claims, and he has not shown that the judge's decision was an abuse of discretion.[10] The claim that White had relevant personal knowledge was based on Briggs' testimony that Branche and Walker told him that White ordered Thomas barred from sorting the City's mail. The judge did not abuse her discretion in finding that, without a further indication of White's knowledge, this hearsay testimony was insufficient to justify his deposition.[11]
 {¶ 25} Thomas also complains that he was denied the opportunity to depose Branche and obtain relevant documents because the judge sustained objections to a duces tecum document request accompanying the notice of deposition. However, the judge did not abuse her discretion in finding the document requests overbroad and ordering Thomas to narrow the time period of his requests. Similarly, although Thomas argues that the City failed to answer interrogatories, the record shows that he agreed to resubmit the interrogatories at issue with narrowed dates in order to accommodate the City's overbreadth objections. He failed to resubmit his document requests or interrogatories by the discovery deadline, and made no further attempt to depose Branche. Therefore, although we reverse in part the grant of summary judgment we do not find the judge erred in her discovery rulings. The second assignment of error is overruled.
Judgment affirmed in part, reversed in part, and remanded.
It is ordered that the parties bear their own costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., J. concurs.
JAMES D. SWEENEY, P.J. CONCURS IN JUDGMENT ONLY (SEE SEPARATE OPINION).
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc. App.R.22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E), unless a motion for reconsideration with supporting brief, per App.R. 26(A) is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] Although the complaint lists only T Group Communications as party plaintiff, the record shows that the proper party is C. Douglas Thomas dba T Group Communications, and Thomas can proceed pro se as sole proprietor.
[2] The record does not state whether it was Thomas who was arrested.
[3] Civ.R. 56(C); Druso v. Bank One of Columbus (1997),124 Ohio App.3d 125, 130-131, 705 N.E.2d 717.
[4] Dresher v. Burt, 75 Ohio St.3d 280, 293-294, 1996-Ohio-107,662 N.E.2d 264.
[5] Id.
[6] Celebrezze v. Dayton Newspapers, Inc. (1988), 41 Ohio App.3d 343,347, 535 N.E.2d 755.
[7] Miller v. Wikel Mfg. Co., Inc. (1989), 46 Ohio St.3d 76, 79,545 N.E.2d 76.
[8] Evid.R. 801.
[9] App.R. 12(A)(1)(c).
[10] Mauzy v. Kelly Servs., Inc., 75 Ohio St.3d 578, 592,1996-Ohio-265, 664 N.E.2d 1272.
[11] Freeman v. Cleveland Clinic Found. (1998), 127 Ohio App.3d 378,388-389, 713 N.E.2d 33.