**Marlon PRIMES, Plaintiff–Appellant,**

v.

**Janet RENO, U.S. Attorney General, Defendant–Appellee.**

**No. 98–3448.**

United States Court of Appeals, Sixth Circuit.

Argued June 8, 1999.

Decided Sept. 13, 1999.

Marlon A. Primes (argued and briefed), Cleveland, OH, pro se.

Janet I. Stich (briefed), Akron, OH, for Plaintiff–Appellant.

Susan Pacholski (argued and briefed), Marleigh D. Dover (briefed), U.S. Department of Justice, Civil Division, Appellate Staff, Washington, DC, for Defendant–Appellee.

Before: MERRITT, NELSON, and RYAN, Circuit Judges.

MERRITT, Circuit Judge.

Plaintiff Marlon Primes, an African–American Assistant U.S. Attorney in the Northern District of Ohio, appeals the district court's granting of the government's cross-motion for summary judgment on all claims. This appeal presents the question whether the plaintiff has set forth a *prima facie* case of racial discrimination by the Department of Justice, and more specifically, his supervisor, Civil Chief Marcia Johnson. For the reasons set forth below and in the thorough analysis of the lower court, its judgment is affirmed.

Mr. Primes began work on October 18, 1992, in the U.S. Attorney's Office in the Northern District of Ohio. Although Primes received work evaluations in both 1992 and 1993, the subject of this suit is the full-year performance evaluation he received in 1994. At that time, Primes was still a junior Assistant U.S. Attorney with very limited litigation experience; to wit, he did not try any cases in 1994 and he delivered his first appellate argument that year. In 1994, all Assistant U.S. Attorneys in the Northern District of Ohio received one of the following performance ratings: (1) Unacceptable; (2) Minimally Satisfactory; (3) Fully Successful; (4) Excellent; and (5) Outstanding. These government attorneys were rated not on the basis of the number of cases won or lost, but rather on the basis of the *quality* of their work in the light of the *complexity* of their case assignments. Primes was given a rating of "Fully Successful" for 1994.

The government's records indicate that over the past ten years, the majority of Assistant U.S. Attorneys in that district office have received a "Fully Successful" rating in their second annual performance evaluation from Civil Chief Marcia Johnson. Ms. Johnson, herself an African–American, stated that Primes' rating of "Fully Successful" was based on the following relevant factors: (1) Primes did not work on difficult and complex cases; (2) Johnson identified several mistakes in Primes' district court and appellate court briefs in 1994; (3) Johnson identified major deficiencies in Primes' legal analysis and general application to his cases; (4) Primes complained about being overworked despite the fact that he was handling a lighter-than-average caseload—in July 1994, for example, Primes had 14 active cases on his personal docket, or just half of the average of 28 cases on the dockets of all civil Assistant U.S. Attorneys in the Northern District of Ohio; and (5) Johnson did not feel that Primes was progressing in his professional development as an Assistant U.S. Attorney.

Primes received his 1994 mid-year progress review on September 28 of that year. Only days later, on October 3, 1994, Primes filed his first written informal complaint of racial discrimination with the Equal Employment Opportunity Office of the Executive Office of U.S. Attorneys in Washington, DC. When Primes' work performance did not improve substantially between the mid-year review and his year-end evaluation, Ms. Johnson expressed the same concerns regarding his work as she had previously. On April 19, 1995, Primes filed his first formal written complaint of racial discrimination with the EEOC, adding an allegation that he had been subject to reprisal for his Equal Employment Opportunity claim. The Department of Justice, however, maintains that Ms. Johnson did not learn that plaintiff had initiated an informal EEO complaint until *after* she completed his year-end 1994 performance evaluation in March 1995. In March 1997, Primes filed suit in federal court, alleging that his 1994, "fully successful" performance evaluation was discriminatory, that he had been subject to different standards than females and non-African-Americans, and that management had retaliated against him for filing his initial allegation of discrimination in October 1994. The parties filed cross-motions for summary judgment, and the district court denied Primes' motion and granted summary judgment to the Department of Justice, dismissing all of Primes' claims.

The district court held that Primes had failed (1) to present direct evidence of discrimination, see JA 291; (2) to set forth a *prima facie* case of discrimination because he failed to establish that he was qualified for a higher evaluation than the one he received; and (3) to show that similarly situated lawyers were treated differently, *see id.* at 295, 298. The court held that even if Primes had set forth a prima facie case of discrimination, the defendant had "provided ample reasons to show Primes' performance evaluation ... was a legitimate finding and not the result of any racial animus." *Id.* at 298. The district court also held that Primes had failed to establish an inference of retaliation, as his final evaluation was based on the identical factors set forth in his progress review six months earlier. This appeal ensued.

In this disparate treatment case, Primes can make a *prima facie* claim of discrimination only by showing that the Department of Justice treated differently a member of a non-protected group similarly situated in an analogous situation. In the instant matter, the government maintains that Primes, *like other Assistant U.S. Attorneys in the civil division*, was evaluated on the basis of the quality of his work in light of the complexity of his case assignments. As the following excerpt from the District Court's opinion demonstrates, the Department of Justice has set forth substantial unrebutted statistical evidence that shows that Primes was not treated differently from similarly-situated non-minority employees:

From November 1, 1988, through 1997, the civil division in the Northern District of Ohio hired (or saw transferred in) 12 [Assistant U.S. Attorneys, or AUSAs]. Of these 12 newly-hired AUSAs, records for one who has left the government or gone to work for another U.S. attorney's office were not available. Another AUSA transferred to the civil division after six years experience as an AUSA in another division. A third AUSA joined the office with 10 years of experience and was soon promoted to a supervisory position.

About half of the remaining nine attorneys received a "fully successful" rating during their second full year with the Northern District, that was their same rating as their first year, and most of these lawyers were white. (Second year ratings were not complete or available for a few others). A similarly situated attorney who is not a minority was rated on a new scale in his second year evaluation and received a grade ... equivalent to the former "fully successful" grade. (Of the two AUSAs who received an "excellent" rating during the second year, one was white and the other was African–American.)

*In summary, the defendant treated plaintiff the same as at least four similarly situated AUSAs when Primes was rated "fully successful" during his second year with the civil division.* One black male and one white male were rated higher but at least four others received the same rating.

JA 295–96 (emphasis added) (footnote omitted).

Under these circumstances, the employment action at issue—Primes' 1994, mid-range, performance evaluation of "fully successful"—is not the type of adverse employment action contemplated by Title VII.

If every low evaluation or other action by an employer that makes an employee unhappy or resentful were considered an adverse action, Title VII would be triggered by supervisor criticism or even facial expressions indicating displeasure. Paranoia in the workplace would replace the prima facie case as the basis for a Title VII cause of action. The case law supports our view that the employer conduct in this case will not support a Title VII cause of action. *See Yates v. Avco*, 819 F.2d 630, 638 (6th Cir.1987) (plaintiff did not suffer adverse employment action, where demotion was in response to request for a transfer away from a harassing supervisor, salary and benefits were not reduced, and employee was assured that she would receive the next available position at higher grade); *Sweeney v. West*, 149 F.3d 550, 557 (7th Cir.1998) (if negative performance evaluation were deemed actionable as "retaliation," it would "send a message to employers that the slightest nudge or admonition ... can be the subject of a federal lawsuit"); *Rabinovitz v. Pena*, 89 F.3d 482, 488–89 (7th Cir.1996) (low performance evaluation and consequent ineligibility for discretionary bonus not actionable adverse employment action); *Montandon v. Farmland Industries, Inc.*, 116 F.3d 355, 359 (8th Cir.1997) (lower performance evaluation not used as basis for any action against employee not "adverse employment action"); *Meredith v. Beech Aircraft Corp.*, 18 F.3d 890, 896 (10th Cir.1994) (same).

Accordingly, the judgment of the district court is AFFIRMED.