Delores J. STONE, Plaintiff–Appellant,

v.

BOARD OF DIRECTORS OF THE TENNESSEE VALLEY AUTHORITY, Defendant–Appellee.

No. 00–6328.

United States Court of Appeals, Sixth Circuit.

May 15, 2002.

Before GUY and CLAY, Circuit Judges; COHN, District Judge.*

PER CURIAM.

Plaintiff, DeLores J. Stone, appeals from the summary judgment granted to defendant, Board of Directors of the Tennessee Valley Authority (TVA), on her Title VII sex discrimination and retaliation claims. 42 U.S.C. § 2000e. Plaintiff argues that there are material issues of fact precluding summary judgment. After review of the record and consideration of the arguments presented on appeal, we affirm.

## I.

Plaintiff was hired at the TVA's Sequoyah Nuclear Plant in 1978 as an instrument mechanic. After completing training, she worked as a senior instrument mechanic (SIM) from 1982 to 1988, when she lost her job through a reduction in force. From 1990 until 1995, plaintiff worked as a contract employee for TVA. On March 6, 1995, plaintiff was hired at TVA's Widows Creek Fossil Plant as an instrument mechanic.

TVA also hired Ronald J. Wells on February 10, 1995, Jerome W. Shulock on February 10, 1995, and Mark Thomas on March 13, 1995, as instrument mechanics at Widows Creek. Wells and Shulock, like plaintiff, had worked as SIMs for TVA in the 1980s. In addition, Brian Bradford transferred from Sequoyah, where he was a SIM, to work as an instrument mechanic at Widows Creek. There were no openings for SIMs at Widows Creek at this time.

Instrument mechanics and SIMs calibrate and repair instruments that measure and regulate the pressures, temperatures, flows, and other aspects of the operation of equipment at a power plant. SIMs perform more complex work with digital electronic controls and computers, and are paid more than instrument mechanics. Both types of mechanics are represented by the International Brotherhood of Electrical Workers (IBEW). The IBEW is a member of the Tennessee Valley Trades and Labor Council (Council), an association of labor organizations representing TVA employees in trades and labor bargaining units under the General Agreement Between TVA and the Council.

In the early 1980s, all SIM training was done centrally at a training center near Sequoyah. In 1988, the TVA began separate training programs at the fossil plants because the new systems at the fossil plants differed from those in the nuclear plants. In 1991, TVA and IBEW agreed to Bulletin SIM–08, which outlined a two-track SIM training program at fossil and hydro plants. Employees with previous SIM training had to complete an eight-week course. Those employees with no previous training had to complete six self-study modules as well as the eight-week course. The eight-week course was offered only when there was a vacant SIM position. TVA claims that all the new hires and transfers in 1995 were told that they would have to complete SIM training before they could be promoted from instrument mechanic to SIM, but plaintiff denies being told this.

In 1997, Widows Creek had two SIM vacancies. Eligibility for SIM training was determined by a joint union/management committee at the plant and approved by a TVA-wide joint union/management committee. Over the years, eligibility was always based on seniority in the instru-

---

* The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

ment mechanic classification from the date of last hire. Brian Bradford and David K. Blizzard were chosen because their seniority based on the date of last hire was greater than that of the other instrument mechanics at Widows Creek, including plaintiff. Bradford had previously worked as a SIM, but Blizzard had no previous SIM training or experience. Plaintiff filed a formal EEO administrative complaint on June 13, 1997, alleging discrimination in being passed over for SIM training and promotion.

Plaintiff also complained to management about performing SIM duties while being paid as an instrument mechanic. She had several meetings with management. On February 20, 1998, plaintiff met with Jerald T. Smith, plaintiff's production supervisor; Steven Baugh, production manager for Widows Creek; and Lee Boggs, a TVA human resources consultant. Plaintiff claims she left the meeting when Baugh raised his voice and shook his fist at her. After plaintiff left the room, Boggs suggested plaintiff should be sent for a fitness-for-duty evaluation because of anger management issues. Thomas W. Sajwaj, Ph.D., the psychologist who manages TVA's fitness-for-duty program, told Boggs that an examination is appropriate when an employee appears hostile, combative, and angry.

TVA presented evidence that prior to and at this meeting, plaintiff was hostile and exhibited inappropriate signs of anger toward her supervisors and others. Plaintiff states that she was always professional and denies exhibiting inappropriate anger. Prior to the February 20 meeting, however, plaintiff decided to stop paying union dues. It is undisputed that in January 1998 while talking to a payroll clerk in Knoxville about stopping the payroll deductions for her union dues, plaintiff called the clerk a bitch. Later that same day she

asked another clerk, "Why the hell can't I get any help from you damn people." Both clerks complained, and these complaints were conveyed to Widows Creek management. The clerks characterized plaintiff's behavior as hostile and offensive. Plaintiff's husband also testified that plaintiff's accumulated frustration and stress caused her to be angry all the time. He stated: "[Y]ou couldn't talk to her." Plaintiff argues that her husband was testifying about her behavior after the fitness-for-duty examination. But Robert Stone clearly identified the time period for her angry behavior as six months prior to March 1998. This period would predate the fitness-for-duty examination in February 1998.

On February 23, 1998, plaintiff was examined by Dr. Sajwaj and subsequently an independent psychologist. Dr. Sajwaj determined that plaintiff could safely return to work. Plaintiff states she was so humiliated by the examination, her doctor placed her on medical leave. On April 1, 1998, plaintiff filed a formal administrative complaint with TVA's EO compliance staff alleging retaliation.

In March 1998, Widows Creek decided to promote all remaining instrument mechanics to SIMs as part of a new organizational structure for the plant. The remaining five instrument mechanics were scheduled for SIM training in two groups. Wells, Shulock, and Roden were to begin March 30, and the second group, composed of plaintiff and another male, Glen Hagan, were to begin after the first group completed training. TVA states that it divided the training for workload considerations to make sure mechanics were available to work on the plant floor at all times. The groups were chosen on the basis of seniority from date of last hire. Plaintiff filed a formal EEO administrative complaint on May 5, 1998, alleging retaliation in being

placed in the second training group. Plaintiff began her training on June 22, 1998, and was promoted to SIM on September 4, 1998.

In the Spring of 1998, plaintiff's production supervisor decided he would no longer include written comments on annual service reviews if the overall rating was fully adequate. Supporting comments are required by the TVA service review procedures only when the overall rating is better or less than fully adequate. In April 1998, plaintiff received a service report with a fully adequate overall rating and no supporting comments. During the same period, Smith reviewed approximately ten other employees and provided no supporting comments on their service reports. Plaintiff complained to management, and on May 19, 1998, she contacted a TVA EO counselor alleging retaliation. In order to resolve the matter, Smith revised the review to include comments similar to those provided in previous years. On July 15, 1998, plaintiff filed a formal complaint with the TVA compliance office alleging retaliation based on the lack of comments.

On July 14, 1999, plaintiff filed her complaint alleging that she was discriminated against on the basis of sex when she was passed over for promotion in 1997 and 1998. She also alleged illegal retaliation in failing to place her in the first SIM training group in 1998, ordering a fitness-for-duty examination, and failing to include comments on her positive annual review. All of plaintiff's formal EEO administrative complaints were pending at the time the lawsuit was filed. The district court granted summary judgment for the TVA on August 31, 2000. Plaintiff appealed.

## II.

We review the district court's grant of summary judgment *de novo*. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir.

1997). Summary judgment is appropriate when there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### A. Sex Discrimination

Discrimination may be proven by direct or circumstantial evidence. When relying on circumstantial evidence, the plaintiff must prove by a preponderance of the evidence a *prima facie* case of discrimination by introducing evidence sufficient to support a finding that (1) plaintiff was a member of a protected class, (2) plaintiff suffered an adverse employment action, (3) plaintiff was qualified for the position not gained, and (4) a person not of the protected class was selected over plaintiff. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Once the plaintiff has made a *prima facie* case, the employer must rebut the presumption of discrimination by producing evidence that someone was preferred over plaintiff for a legitimate, non-discriminatory reason. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1082 (6th Cir.1994). The plaintiff then bears the burden of producing evidence from which a jury may reasonably reject the employer's explanation. The plaintiff must show that (1) the proffered reasons have no basis in fact, (2) the proffered reasons did not actually motivate the employer, or (3) the proffered reasons were insufficient to motivate the employer. The first type of showing consists of evidence that the employer's explanation had no factual basis. In the second, the

plaintiff admits the factual basis underlying the employer's proffered explanation, but shows circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant. The third type ordinarily consists of evidence that other employees were not treated similarly. *Id.* at 1084.

■ The district court found that plaintiff established a *prima facie* case of discrimination, but that plaintiff failed to present evidence to refute TVA's legitimate nondiscriminatory reasons for not promoting plaintiff earlier. Those legitimate reasons were that promotions were based on seniority from date of last hire, and that all instrument mechanics received SIM training before being promoted.

Plaintiff argues that the General Agreement did not require that seniority be determined from the date of last hire for promotion purposes. Paragraph B–III.2.d.1 of the General Agreement states that preference is given to *qualified* employees for promotions based on the "length of TVA service." Paragraph III–B.2.d.3 states that when there are no qualified employees applying for a position, seniority is determined based on the last employment date. Plaintiff argues that since she was qualified, her seniority should not have been based on her date of last hire. Plaintiff proffered Alvin Rosamond's affidavit stating that plaintiff needed no additional training, and that people who previously worked as SIMs but were rehired as instrument mechanics were traditionally promoted automatically to SIM after one year of service. Plaintiff argues that the district court improperly weighed evidence and judged credibility while ignoring this evidence.

The issue, however, is not whether Widows Creek violated the General Agreement or failed, contrary to past TVA practices, to recognize previous SIM experience.

The question is whether plaintiff was passed over for promotion based on her sex. Scott Bynum told Rosamond that Widows Creek would require SIM training for not only plaintiff, but also Wells and Bradford, all of who had previous SIM experience. Wells and Shulock were passed over for promotion in 1997 even though they had SIM experience before their last date of hire. Blizzard, one of the instrument mechanics trained and promoted in 1997, had no previous SIM experience. Wells, Bradford, and Shulock all had to take SIM training before being promoted. The undisputed evidence shows that TVA decided to promote instrument mechanics based on seniority from the date of last hire; and that all instrument mechanics, including male instrument mechanics who, like plaintiff, previously worked as SIMs, had to undergo new training.

Plaintiff argues that the district court improperly ignored the evidence that Wells had only three weeks of training, as opposed to the entire eight weeks that plaintiff was required to complete. TVA presented evidence that Wells underwent eight weeks of training. While there may be a question of fact as to actual number of weeks of training, it is undisputed that Wells was not promoted to SIM until June 1, 1998, a little more than eight weeks after he began training on March 30, 1998. Plaintiff began training on June 22, 1998, and was also promoted a little more than eight weeks later on September 7, 1998. The mere existence of *some* alleged factual dispute does not defeat an otherwise properly supported motion for summary judgment. There must be no *genuine* issue of *material* fact. A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Wells did not receive

his promotion in a shorter time period than plaintiff. The fact that he might not have sat in the classroom as long as plaintiff and the other instrument mechanics is *de minimus* employment action. This discrepancy cannot support a discrimination claim.

Plaintiff finally argues that TVA's proffered reasons have no basis in fact because she claims that it was not necessary to train the instrument mechanics in stages in 1998 to provide continuous coverage on the plant floor. According to plaintiff, the mechanics were readily available on the floor as needed while they were in training. But speculation that there were better or other ways to provide coverage on the floor does not show that the proffered justification was merely a pretext for discrimination. *See Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577–78, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978).

Plaintiff failed to present any evidence upon which a jury could reasonably conclude that TVA's decision to require training and choose instrument mechanics on the basis of seniority from the date of last hire was a pretext for treating plaintiff differently from other similarly situated, male instrument mechanics at Widows Creek.

B. Retaliation

To establish a *prima facie* case of retaliation, plaintiff must show that (1) she engaged in protected activity, (2) defendants knew of the protected activity, (3) defendants took an adverse employment action or plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor, and (4) there was a causal connection between the protected activity and the adverse employment action or harassment. If plaintiff establishes this *prima facie* case, the burden shifts to defendants to articulate legitimate, nondiscriminatory

reasons for its actions. Plaintiff must then demonstrate that the proffered reasons were "not the true reason" for the employment decision. The plaintiff bears the burden of persuasion throughout the entire process. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 793 (6th Cir. 2000).

Summary judgment was proper on plaintiff's claim that the failure to train her in the first group in 1998 was retaliation. As discussed above, plaintiff failed to show that seniority from the date of last hire and continuous floor coverage were not the "true reasons" for placing her in the second training group.

The district court granted summary judgment on her remaining retaliation claims, finding neither the fitness examination nor the positive review were adverse employment actions. An adverse employment action is a materially adverse change in the terms or conditions of the plaintiff's employment caused by the employer's actions. *Hollins v. Atl. Co.*, 188 F.3d 652, 662 (6th Cir.1999). The materially adverse change must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (citation omitted). It may be indicated by termination, demotion through a decrease in wage or salary, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation. *Id. De minimus* employment actions are not materially adverse employment actions. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir.2000).

Clearly a positive review, with or without supporting comments, is not an adverse employment action. *See Primes v. Reno*, 190 F.3d 765, 767 (6th Cir.1999) (a mid-range performance evaluation is not an adverse employment action); *Hollins,*

188 F.3d at 662 (lowered performance evaluation was not an adverse employment action where it did not affect wages paid). Plaintiff proffered no evidence showing that her annual review affected the terms and conditions of her employment.

■ The same is true with the fitness examination. There was no evidence that the fitness examination affected the terms and conditions of plaintiff's employment. Plaintiff received a positive annual review and was promoted to SIM shortly after the fitness examination. Not everything that makes an employee unhappy is an adverse employment action. *Primes*, 190 F.3d at 767.[1]

■ While plaintiff argues that the evaluation and the fitness examination were adverse employment actions, she also seems to characterize them as harassment. To establish that an employer's conduct constitutes severe or pervasive retaliatory harassment, the plaintiff must show that the "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal quotation marks and citations omitted). *See also Morris*, 201 F.3d at 790. We approach the question from both an objective and subjective perspective. We look both to whether a reasonable person in plaintiff's position would find that the alleged conduct constitutes severe or pervasive retaliation and to whether the plaintiff subjectively perceived the employer's actions as being severe and pervasive retaliation. *See Harris*, 510 U.S. at 21, 114 S.Ct. 367. Appropriate factors to consider "include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23, 114 S.Ct. 367.

Plaintiff had a strong subjective belief that she was a victim of retaliatory harassment as a result of the lack of comments on her review and the fitness-for-duty examination. Yet from an objective perspective, a positive annual review, even one without comments, is not hostile or abusive, particularly when ten other employees receive reviews without comments. The fitness-for-duty examination was an isolated incident that was conducted pursuant to TVA policy after plaintiff exhibited signs of anger management problems. The examination had no effect on her employment status or her ability to perform her job. Viewing the evidence as a whole, a reasonable person in plaintiff's position would not have believed that the annual evaluation or the fitness examination were sufficiently severe or pervasive to create a retaliatory hostile environment.

AFFIRMED.

---

1. Summary judgment may also be appropriate on alternative grounds. TVA offered evidence that other employees were asked to undergo an examination for inappropriate expressions of anger. Plaintiff does not dispute her statements to the Knoxville payroll clerks. That behavior demonstrated inappropriate expressions of anger. Thus, even if the examination is an adverse action, the examination was ordered because of her inappropriate behavior–a legitimate nondiscriminatory reason–which plaintiff did not refute.