**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 19a0046n.06**

**No. 18-1350**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| VICKI GIRON, | ) | |
| | ) | **FILED**<br>Jan 29, 2019<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| TYCO ELECTRONICS CORP., | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

**BEFORE: GIBBONS, SUTTON, and McKEAGUE, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.** Vicki Giron sued her former employer, Tyco Electronics Corp., alleging sex discrimination in violation of Michigan's Elliot-Larsen Civil Rights Act ("ELCRA") and wrongful termination in violation of public policy. Giron established her *prima facie* case of discrimination but failed to rebut Tyco's legitimate, nondiscriminatory reason for terminating her—Giron's "below standards" behavior. The *McDonnell Douglas* burden-shifting framework separates those employment discrimination claims that merely state a *prima facie* case and those that can overcome an employer's proffered nondiscriminatory justification by showing pretext. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Giron's claim falls in the former category and thus fails.

As for wrongful discharge, Giron alleged that Tyco terminated her employment based on her refusal to engage in illegal price-fixing. This claim is self-defeating. Because Giron admits

to acquiescing in her supervisor's request to set certain prices, Giron did not "refuse" to engage in the allegedly illegal conduct.

We find that the district court properly granted summary judgment in favor of Tyco on all claims. Therefore, we affirm.

I.

In October 2012, Tyco hired Giron as a Product Manager in its Troy, Michigan office. From her initial hire until November 2013, Giron's direct supervisor was Elizabeth Schroeder. Schroeder conducted Giron's first performance review for Tyco's fiscal year 2013, which included evaluations of performance and behavior. Schroeder rated Giron as "Meets Expectations" for results and "At Tyco Electronics Standards" for values (behavior). The review also noted areas in which Giron needed improvement, specifically in building relationships and interacting with others.

Suraj Alva then replaced Schroeder as Giron's direct supervisor. According to Giron, problems arose between Alva and herself because Alva treated her differently and imposed rules specific to her. Giron believed Alva was shutting her out and catering to an all-male group of sales managers she calls "The Legacies." According to Tyco, issues with Giron arose because she was combative and caused conflict with sales team members. Giron claims that Alva directed her to "drop prices below market value" for a certain product and customer. DE 28, Resp. to Mot. for Summ. J., Page ID 385. Giron voiced concern but completed the task as Alva instructed.

Alva conducted Giron's 2014 review and rated her as "Meets Expectations" for results and "At Tyco Standards" for behavior. Tyco claims that Alva initially rated both Giron and another employee at "Below Standards" but was told by his supervisor and others to elevate one of them to "At Standards" level. Alva then raised Giron up to a satisfactory rating.

Alva also conducted Giron's 2015 review and rated her as "Meets Expectations" for results and "Below Tyco Standards" for behavior. Tyco then placed Giron on a performance improvement plan ("PIP"), beginning November 11, 2015 and scheduled to end on or around January 8, 2016.

In December 2015, Alva reached out to sales managers for feedback on Giron. Between January 5-6, 2016, Alva received emails from five males, each generally describing Giron as "confrontational," "difficult to deal with," and "unresponsive." DE 23-25, Sales Managers Feedback, Page ID 345–49. On January 11, 2016—three days after Giron's PIP was scheduled to end—Alva received an email from a female sales manager offering negative feedback and attaching emails from 2014, evidencing aggravated messages Giron sent to others.

Tyco extended Giron's PIP an additional two weeks. When Giron expressed confusion, she was told via email that the two-week extension was "due to the holiday" but also "meant for [Giron] to focus on the specified objectives" of the PIP. DE 23-26, PIP Extension Email, Page ID 361. Tyco terminated Giron on January 22, 2016.

Giron sued Tyco in district court. The district court granted summary judgment in favor of Tyco, disposing of Giron's discrimination and wrongful discharge claims. Giron timely appealed.

II.

This court reviews a district court's order granting summary judgment *de novo*. *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006). "Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)). We view

the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in its favor. *Id.*

To defeat summary judgment, the party opposing summary judgment "must simply show 'sufficient evidence to create a genuine issue of material fact.'" *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005) (quoting *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000)). A fact is "material" if "proof of that fact would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted). A dispute as to a material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.

"Michigan courts utilize the federal *McDonnell Douglas* burden-shifting framework for evaluating discrimination claims founded upon circumstantial evidence." *In re Rodriguez*, 487 F.3d 1001, 1008 (6th Cir. 2007) (citing *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 520–21 (Mich. 2001)). *See Tilley v. Kalamazoo Cnty. Road Comm'n*, 777 F.3d 303, 308 (6th Cir. 2015) (applying the *McDonnell Douglas* analysis to plaintiff's discrimination claim arising under the ELCRA).

As Giron's claim against Tyco relies on circumstantial evidence, we evaluate the merits of her ELCRA claim under the *McDonnell Douglas* analysis. Further, as this is an appeal from the grant of summary judgment, we must ask whether there is sufficient evidence to create a genuine issue of material fact at each stage of the *McDonnell Douglas* analysis. *See Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000).

In the first stage, the plaintiff must establish a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802. In the second stage, the burden shifts to the defendant

to offer a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* The burden shifts back to the plaintiff in the third stage, in which the plaintiff must show that the defendant's stated reason for such adverse action is, in fact, pretext. *Id.* at 804.

A.

*Prima Facie Case*. To establish a prima facie case of an ELCRA violation, the plaintiff must show: (1) membership in a protected class, (2) adverse employment action, (3) qualification for the position, and (4) discharge "under circumstances that give rise to an inference of unlawful discrimination." *Lytle v. Malady*, 579 N.W.2d 906, 914 (Mich. 1998). By establishing a prima facie case, the plaintiff creates a presumption of discrimination. *Id.* at 914–15. Because Tyco concedes Giron's membership in a protected class, our inquiry begins with the second prong.

The evidence demonstrates that Giron suffered two adverse employment actions: the PIP and termination. Tyco's termination of Giron is clearly an adverse employment action. *See Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996) (including "termination of employment" in a list of actions qualifying as adverse employment actions). While PIPs do not constitute adverse employment actions alone,[1] a PIP that results in termination may constitute an adverse employment action. *See Kyle-Eiland v. Neff*, 408 F. App'x 933, 941 (6th Cir. 2011) (finding the adverse employment action element satisfied when "the PIP may have led directly to [the employee's] dismissal"). Because Giron's placement on a PIP preceded her termination, we therefore also consider her PIP an adverse employment action at this stage of the analysis.

The evidence clearly demonstrates Giron was well qualified for her position. As the district court noted, "Giron brought 25 years of experience to her role as a Global Product Manager at

---

[1] *See, e.g.*, *Bacon v. Honda of America Mfg., Inc.*, 192 Fed. App'x 337, 343 (6th Cir. 2006) (noting that PIPs "do not, on their own, generally qualify as adverse employment actions") (citing *Agnew v. BASF Corp.*, 286 F.3d 307, 310 (6th Cir. 2002); *Primes v. Reno*, 190 F.3d 765, 767 (6th Cir. 1999)).

Tyco. Giron worked as a Senior Project Engineer at General Motors and . . . Senior Program Manager at TRW Automotive." DE 35, Op. & Order, Page ID 951. Tyco argued below that Giron's behavioral concerns render her unqualified, but this confuses the *McDonnell Douglas* analysis by conflating two distinct stages.[2] Thus, Giron has presented sufficient evidence to satisfy the third prong.

Giron satisfied the fourth prong, in part, by demonstrating that she "was replaced by someone outside of the protected class." *Tilley*, 777 F.3d at 308. Indeed, Tyco replaced Giron with a male.[3] Regarding her PIP, Giron asserts that discrimination can be inferred—and thus the fourth prong satisfied—because Tyco treated her differently than similarly-situated individuals outside of her protected class. She argues that, because Tyco failed to place three male employees with similar or worse reviews[4] on a PIP, her placement on a PIP creates an inference of discrimination and meets the fourth element of her prima facie case. We are not persuaded that Giron's proposed comparators are "similar in 'all relevant aspects.'" *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 654 (6th Cir. 2012) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). As the district court also noted, Giron's three proposed comparators reported to different supervisors than Giron and worked in different departments or at different levels. While these differences are not always dispositive, they are relevant factors in our analysis. We find that Giron has failed to satisfy the fourth prong regarding her PIP.

---

[2] See *Cline*, 206 F.3d at 660–61 (finding the district court "improperly imported the later stages of the *McDonnell Douglas* inquiry into the initial prima facie stage" when it considered the defendant-employer's proffered nondiscriminatory reason as a predicate for finding a lack of qualification for the position).

[3] Alva acknowledged in his deposition that Benjamin Ervin (hired by Tyco after Giron's termination) assumed responsibilities formerly tasked to Giron. In fact, Ervin took over Giron's main product line. No one else assumed any of Giron's former responsibilities.

[4] Mike Aiello, one of Giron's proposed comparators received a "Below for Results" and "At TE Standards for Behavior" in his review. Ken Mleczek and John Hall, Giron's other two proposed comparators, allegedly received "bottom rating[s]" and "were both very concerned they were going to be PIPed." DE 29-4, Giron Dep., Page ID 783.)

Therefore, she has established a prima facie case only on the basis of her termination as an adverse employment action.

B.

*Legitimate, Nondiscriminatory Reason.* By Giron establishing her prima facie case, and thus raising a presumption of discrimination, the burden then shifts to Tyco to offer a legitimate, nondiscriminatory reason for terminating her. *McDonnell Douglas Corp.*, 411 U.S. at 802. We have held that an employee's "failure to correct on-going performance deficiencies" and "failure to meet reasonable expectations" under a PIP suffice to satisfy an employer's burden to proffer a nondiscriminatory justification for termination. *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 303 (6th Cir. 2016).

In its motion for summary judgment, Tyco offered as its nondiscriminatory justification for terminating Giron "her failure to meet [Tyco]'s performance expectations." DE 23, Mot. for Summ. J., Page ID 191. On appeal, Tyco's proffered reason for terminating Giron is "her failure to meet [Tyco]'s behavioral expectations." CA6 R. 18, Appellee Br. at 33. Tyco supports this proffer by citing Giron's annual performance reviews, the feedback emails received during her PIP, and her supervisors' testimony and declarations. As such, Tyco has met its burden to come forward with evidence of a legitimate, nondiscriminatory reason for the adverse employment action.

C.

*Pretext.* Under the *McDonnell Douglas* framework, the burden shifts back to Giron to present sufficient evidence that Tyco's proffered reason is pretextual. There are three avenues for a plaintiff to demonstrate pretext: by showing the stated reason "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the

challenged conduct." *Jackson v. VHS Receiving Hosp., Inc.*, 814 F.3d 769, 779 (6th Cir. 2016) (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)). To satisfy this burden, Giron must produce "enough evidence to . . . rebut, but not to disprove" Tyco's stated justification. *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 651 (6th Cir. 2015) (alteration in original) (quoting *Shazor v. Prof'l Transit Mgmt. Ltd.*, 744 F.3d 948, 957 (6th Cir. 2014)).

The first and third of these methods offer Giron no help. First, based on her annual review reports and her own statements therein, Tyco's explanation of Giron's behavior as its reason for her termination has at least a basis in fact. The third method usually involves a showing that "other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Jackson*, 814 F.3d at 779–80 (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). Giron has not shown that Tyco retained male employees with behavior ratings comparable to hers.

The second method of showing pretext is a closer call for Giron. Still, there is insufficient evidence showing that Tyco's stated reason "did not actually motivate" Tyco's termination of Giron. Giron's strongest pieces of evidence—(1)Schroeder's comments contradicting her affidavit, (2) the Callard-Knight Email, and (3) the Gerelus-Alva Email—fall short of the mark. We examine each in turn.

### a. Schroeder's Comments

Through her declarations and deposition testimony, Giron claimed Schroeder (i) was "furious with the sales team, reported their behavior . . . and backed up Giron," (ii) "directed Giron not to allow [the sales team to direct pricing]," (iii) told Giron that, "[i]f we were men, we'd be viewed as go-getters and not hard to work with," (iv) "chuckled at the suggestion . . . that Giron

could be intimidating," (v) "recogniz[ed] that Giron was an experienced professional with global product management responsibilities," (vi) "stepped in and shut the criticism [of Giron] down," stating, "[l]look, she has done more in one year than the last five Product Managers have in the last five years," and (vii) "did not feel [the criticisms she heard about Giron] were justified." CA6 R. 13, Appellant Br. at 5–8.

Tyco asserts that Giron's "own unsupported suppositions about what she thinks Schroeder thought or felt about Giron's performance, behavior, office relations, or workplace atmosphere" are inadmissible and irrelevant. CA6 R. 18, Appellee Br. at 29. Giron argues that Schroeder's statements are admissible under Fed. R. Evid. 801(d)(2)(D) as "non-hearsay admissions." *See Stein v. Atlas Indus., Inc.*, 730 F. App'x 313, 320 n.2 (6th Cir. 2018) (statements allegedly made by employer's H.R. director concerning a matter within the scope of employment "plainly" fall under 801(d)(2)(D)'s hearsay exclusions). Rule 801(d)(2)(D) provides that a statement offered against an opposing party and made by the party's agent or employee on a matter within the scope of (and during) that employment or agency relationship is not hearsay. The district court declined to consider Schroeder's statements, as averred to by Giron, based on the rule against hearsay. We find, however, that Schroeder's comments—introduced into the record by Giron's affidavit—fit the mold of Rule 801(d)(2)(D) and are admissible as non-hearsay admissions.[5]

Even so, Schroeder's comments do not satisfy Giron's burden to show that Tyco's reason for terminating her was pretextual. These statements may suggest that members of the sales team held some animus toward Giron, but they do not demonstrate that such animus was driven by sex

---

[5] Our circuit has held that statements by employees not involved in a termination decision are typically excluded as hearsay, because the termination decision is outside the scope of their employment. *See Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999). But we have allowed statements by "managerial-level employees who have the ability to influence a personnel decision." *Johnson v. Kroger Co.*, 319 F.3d 858, 868 (6th Cir. 2003) (citing *Ercegovich*, 154 F.3d at 354–55). Tyco admits on appeal that Schroeder "was involved in the decision to terminate Giron," **(CA6 R. 18, Appellee Br. at 31),** so Giron's statements are admissible against Tyco.

discrimination. This evidence does not cast doubt on Tyco's justification for Giron's termination (below-Tyco-standards behavior), which finds support throughout the record.

### b. The Callard-Knight Email

On October 21, 2015, before the Tyco instituted Giron's PIP, Mary Beth Knight (Human Resources Representative) sent an email to Timothy Callard (Alva's supervisor) stating in part: "We had planned to exit [Giron] for performance . . ." DE 28-7, Knight Email, Page ID 459. The parties dispute the email's context and the statement's meaning. Tyco argues that it is irrelevant because the "sole alleged discriminator and decision-maker, Mr. Alva, is not involved in this email . . ." DE 23, Mot. Summ. J., Page ID 179, n.4. Giron argues that the email and its timing indicate that her "termination was a foregone conclusion" and her placement on a PIP was a "sham." CA6 R. 13, Appellant Br. at 18.

The district court found that the Callard-Knight email was insufficient to show pretext and suggested its references to creating an open position and supplementing Tyco's "sensors business" actually bolstered Tyco's proffered nondiscriminatory reason. The email fails to demonstrate that Giron's below-Tyco-standards behavior did not actually motivate Tyco's termination of her. We find no indication of pretext in the language of this email.

### c. The Gerelus-Alva Email

On December 15, 2015, during Giron's PIP, Leanne Gerelus (Human Resources Representative) sent an email to Alva and copied Knight. Among other things, the email stated "I wanted to follow up on several things regarding Vicki [Giron]: . . . We need to gather specific examples of complaints (Documentation and/or emails)." DE 28-9, Gerelus Email, Page ID 467. Giron argues that this email is evidence of pretext because it shows Tyco intentionally seeking

*negative* feedback. Tyco argues that it suggests Alva had already received concerns about Giron during her PIP. The district court agreed with Tyco and found that this email failed to show pretext.

While the phrasing in this email may be read in different ways, no discernable meaning suggests that Giron's below-standards behavior did not actually motivate Tyco to terminate her employment. This email presents no alternative explanation for her termination and fails to show pretext. Like her other proffered evidence, the Gerelus-Alva email falls short.

Even if the district court failed to credit some admissible circumstantial evidence (Schroeder's comments), as explained above, such evidence does not create a genuine issue as to whether "an illegal motivation was more likely than that offered by the defendant." *Johnson*, 319 F.3d at 866 (emphasis omitted). Giron failed to establish pretext. Therefore, we affirm the district court's grant of summary judgment on Giron's sex discrimination claim.

IV.

Giron argues that the district court erred in granting summary judgment to Tyco on her wrongful discharge claim. Despite Giron's exposition of the controlling law—that price-fixing is contrary to public policy and violative of Section 2(a) of the Clayton Act—her claim has no evidentiary or legal basis. This is made clear in *Suchodolski v. Michigan Consol. Gas Co.*, 316 N.W.2d 710 (Mich. 1982). As the district court correctly noted, the *Suchodolski* court described this cause of action as arising from "the failure or refusal to violate a law in the course of employment." *Id.* at 711. In *Pratt v. Brown*, the Sixth Circuit applied the *Suchodolski* holding and explained that the plaintiff asserting this cause of action must prove that he refused his employer's request to violate the law and that his refusal was causally connected to his termination. 855 F.2d 1225, 1236–37 (6th Cir. 1988).

When Alva instructed Giron to enter a certain price into Tyco's database, Giron complied. Giron's initial resistance and concern over the legality of the practice do not equate to refusal. As the district court found, "[a]n ephemeral objection such as Giron's is insufficient to constitute a 'refusal' under the *Suchodolski* standard for public policy torts." DE 35, Op. & Order, Page ID 963. Giron did not "fail or refuse" to violate a law at the behest of her employer, so this claim must fail. Thus, the district court did not err in granting summary judgment on Giron's wrongful discharge claim.

V.

For the foregoing reasons, we affirm the district court's decision to grant summary judgment in favor of Tyco.