[Cite as *Paranthaman v. State Auto Property & Cas. Ins. Co.*, 2014-Ohio-4948.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Sridharan Paranthaman, | : | |
| Plaintiff-Appellant, | : | No. 14AP-221 |
| | | (C.P.C. No. 13CV-1324) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| State Auto Property & Casualty Insurance Company et al., | : | |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on November 6, 2014

*Redman Law Offices, LLC*, and *Jamaal R. Redman*, for appellant.

*Baker & Hostetler, LLP*, *Matthew W. Hoyt* and *Margaret K. Reid*, for appellees.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Plaintiff-appellant, Sridharan Paranthaman, appeals from a decision and entry of the Franklin County Court of Common Pleas granting the motion for summary judgment of defendants-appellees State Auto Property & Casualty Insurance Company ("State Auto") and Richard Hopkins. Because the trial court did not err in granting appellees' motion for summary judgment and did not abuse its discretion in denying in part appellant's motion to compel, we affirm.

 I. Facts and Procedural History

{¶ 2} Appellant, a naturalized United States citizen born in India, began his employment relationship with State Auto in 2006 as an independent contractor business analyst. During his time as an independent contractor, appellant reported to Hopkins, an

employee of State Auto. In December 2007, Hopkins hired appellant as a full-time staff employee of State Auto in the position of business analyst. Hopkins acted as appellant's immediate supervisor. The starting salary range for staff business analysts at State Auto was $49,730 to $82,883. State Auto agreed to a starting salary of $80,000 for appellant.

{¶ 3} The change in appellant's status from independent contractor to employee brought with it a probationary period of employment. In January 2008, shortly after he became an employee, appellant received a written memorandum from Hopkins stating appellant needed to improve in the areas of teamwork and business requirements documentation. Appellant responded with a written letter stating he "agree[d]" with Hopkins' assessment of his teamwork and communication skills, but "believe[d] this is a cultural challenge." (R. 80, Appellant's Affidavit, exhibit A.) Appellant further conceded in the letter that Hopkins' concerns regarding appellant's business requirements documentation were "accurate." (R. 80, exhibit A.)

{¶ 4} On March 26, 2008, Hopkins issued appellant a second memorandum again detailing Hopkins' concerns regarding appellant's job performance. Hopkins addressed appellant's concerns that the communication and teamwork issues were culturally related and reminded appellant that Hopkins had offered to review drafts of appellant's e-mails to ameliorate any perceived cultural challenges. Hopkins also suggested appellant consult with two other employees to help appellant with teamwork and communication issues but noted that appellant had not followed up with either one of them, a fact that "disappoint[ed]" Hopkins. (R. 65, Appendix to Defendants' Motion for Summary Judgment Vol. I, exhibit No. 7, at 1.) Due to Hopkins' ongoing concerns regarding appellant's job performance, he extended appellant's initial probationary employment period for an additional 90 days.

{¶ 5} Hopkins' concerns about appellant's job performance continued and he noted those concerns in appellant's annual performance reviews. State Auto ranks overall performance on a five-tiered scale: "Does Not Meet," "Somewhat Meets," "Meets," "Somewhat Exceeds," and "Exceeds" expectations for performance of the position. (R. 65, exhibit No. 10, at 2.) For his 2008 performance review, appellant received a "meets" expectations score and did not receive a pay raise. (R. 65, exhibit No. 10, at 3.) Dissatisfied with his performance review, appellant filed a complaint with State Auto's

Human Resources Officer, Mark Sullivan, in April 2009, arguing Hopkins' performance review of appellant was unfair. Additionally, appellant complained to Hopkins' supervisor and to State Auto's internal ethics hotline on July 28, 2009. These complaints made no reference to perceived national origin discrimination.

{¶ 6} In December 2009, State Auto split the Business Analyst job description into five skill levels: Business Associate, Business Analyst I, Business Analyst II, Business Analyst III, and Business Architect. All State Auto business analysts were assigned to one of the five newly-created titles through a four-step process which included an employee self-evaluation, an interview with the business analysis practice lead, opinion of the employee's supervisor, and a final discussion with the employee. Appellant completed the four steps of the reclassification process and was assigned a classification of Business Analyst I. Appellant's salary, benefits, and work assignments did not change as a result of the new classification. The salary range for Business Analyst I was $47,347 to $73,388 per year, thus appellant's annual salary was $6,612 more than the top end salary for his newly classified position.

{¶ 7} In his 2009 performance review, appellant's score slipped to "somewhat meets" expectations. (R. 65, exhibit No. 20, at 4.) Once again, appellant did not receive a pay raise in 2010 following his 2009 performance review.

{¶ 8} Appellant filed two charges of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), one on November 17, 2009 and one on February 27, 2010. Both charges concerned appellant's complaints about Hopkins' treatment of him. The EEOC dismissed both of appellant's charges on the grounds that,"[b]ased upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes." (R. 68, Appendix to Defendants' Motion for Summary Judgment Vol. IV, exhibit No. 7.)

{¶ 9} Sometime in 2010, State Auto assigned Natalie Lindsey (nka Natalie Lightfoot) to be appellant's supervisor rather than Hopkins. Part of Lindsey's responsibilities as appellant's supervisor was to meet with appellant to jointly complete a mid-year performance evaluation. Lindsey scheduled a meeting with appellant for September 13, 2010 to review appellant's performance objectives and his current work assignments. Lindsey, appellant, and Sullivan all attended the meeting. Lindsey offered

help to appellant on ways to improve his time management skills in response to appellant stating he felt overloaded with his work assignments. According to the meeting minutes, appellant "became agitated" when Lindsey tried to understand his concerns about his workload and he then read from a pre-written statement: "I do not feel comfortable continuing this meeting now this way. I would like to have an impartial observer in this meeting on my side. Since last year [Hopkins] confirmed that we cannot audio record these meetings let's reconvene on another day this discussion." (R. 68, exhibit No. 8, at 3.) Lindsey stated Sullivan was the impartial human resources representative at the meeting, but appellant would not agree to that and "raised his voice a couple times." (R. 68, exhibit No. 8, at 3.) After convincing appellant to stay, Lindsey informed appellant she had received a complaint about appellant raising his voice to another co-worker. Appellant immediately stopped the discussion, refused to discuss his performance issues, and ended the meeting.

{¶ 10} Following the September 13, 2010 meeting, Lindsey sent appellant a lengthy e-mail to discuss his conduct and to set guidelines for appellant's behavior in future meetings. Lindsey stated in her e-mail that, going forward, she would "consider any refusal by [appellant] to participate in our meetings – which includes, but is not limited to, a refusal to respond to questions that I ask – to be insubordination and you will be disciplined accordingly." (R. 65, exhibit No. 24, at 1.) Lindsey also expressly stated that in future meetings, she "will no longer tolerate a lack of respect or courtesy and will consider any future lack of respect or courtesy to be insubordination." (R. 65, exhibit No. 24, at 1.) Appellant stated in his deposition that, after receiving this e-mail from Lindsey, he understood what was expected of him at future meetings.

{¶ 11} On October 14, 2010, Lindsey met with appellant to resume their discussions that ended abruptly on September 13, 2010. Once again, Sullivan was present at the meeting. When Lindsey asked appellant about his teamwork skills, appellant refused to answer and stated he would write down her questions and respond at a later date. Lindsey informed appellant it was important that they have an open dialogue about his job performance, but appellant read from another pre-written statement that he was not comfortable and said he was going to leave the meeting. Lindsey and Sullivan told appellant he needed to stay to discuss his job performance, but appellant ignored them

and stood up to leave. Sullivan reminded appellant that his conduct was insubordination and that if he left the meeting, he would be required to leave the building for the rest of the day. Sullivan also informed appellant that if he left the meeting, he would be expected to return to the same room the following day to finish the meeting.

{¶ 12} Appellant left the meeting but did not exit the building; instead, he returned to his cubicle. Sullivan and Lindsey went to his desk approximately 10 or 15 minutes later and told appellant he needed to leave the building in the next 5 minutes or they would have security escort him off the property. Appellant then left the premises on his own.

{¶ 13} That same day, Lindsey prepared a memorandum serving as a written warning to appellant, stating his conduct "both during and after the meeting was insubordinate and unacceptable." (R. 69, Appendix to Defendants' Motion for Summary Judgment Vol. V, exhibit No. 11, at 3.) The memorandum expressly warned that "[f]urther instances of insubordination will not be tolerated, and will be met with discipline up to and including unpaid suspension from work or termination of your employment." (R. 69, exhibit No. 11, at 3.) Lindsey dated the warning for October 15, 2010 to coincide with when the meeting was to resume. Appellant did not come to work on October 15, 2010 but called in sick. Before Lindsey could deliver the written warning, appellant requested and received approval for short-term disability leave through December 16, 2010. Lindsey and Sullivan rescheduled the follow-up meeting for December 17, 2010 at 8:00 a.m. to coincide with appellant's return to work.

{¶ 14} On December 16, 2010, the day before appellant was to return to work and meet with Lindsey and Sullivan, appellant e-mailed Lindsey a list of allegedly discriminatory practices appellant stated he had observed at State Auto, including the discrimination and retaliation charges he had filed with the EEOC.

{¶ 15} Appellant returned to work as scheduled on December 17, 2010 and attended the meeting with Lindsey and Sullivan. At the beginning of the meeting, Lindsey handed appellant the written warning that had been originally prepared for the October 15, 2010 meeting. Lindsey and Sullivan then attempted to address concerns with appellant's job performance, but appellant once again read from a pre-written statement indicating he would not provide immediate answers to questions during the meeting but would take notes and respond at a later date.

{¶ 16} Lindsey reminded appellant that his refusal to answer her questions was insubordination and she reminded him that he had already been disciplined once for similar insubordinate conduct on October 14, 2010. Lindsey asked appellant to read the written warning, which he did; she then asked appellant again to discuss his performance issues with her but appellant once again responded only by reading his pre-written statement. Sullivan then informed appellant his conduct constituted insubordination, and appellant once again read aloud his pre-written statement. At that point, Sullivan informed appellant he was suspended from work, his system access would be turned off, and that Sullivan and Lindsey would contact appellant to let him know the duration and details of the suspension. Appellant acknowledged he understood and left the premises.

{¶ 17} On the afternoon of December 17, 2010, Sullivan sent an e-mail to appellant instructing him to return to work on December 20, 2010 at 2:00 p.m. to complete the meeting regarding appellant's job performance and to come prepared to actually discuss his job performance concerns "that have now been raised * * * on three prior occasions." (R. 69, exhibit No. 13, at 2.) Appellant responded in a December 19, 2010 e-mail that he did not feel comfortable attending any meetings without his lawyer present and asked to reschedule the meeting for a later date. On December 20, 2010, Sullivan responded by e-mail that "it is not appropriate for [your] lawyer to be present" at the meeting. (R. 69, exhibit No. 13, at 1.) Sullivan expressly warned in the e-mail that if appellant did not show up at 2:00 p.m. that day as scheduled, the company "will consider that a further act of insubordination and [your] employment will be terminated." (R. 69, exhibit No. 13, at 1.) Additionally, Sullivan stated that if appellant is unable to attend the meeting for medical reasons, he must provide the appropriate documentation required by State Auto's policies.

{¶ 18} Appellant did not attend the December 20, 2010 meeting, and he did not provide State Auto with any explanation or medical excuse for his absence. Appellant did not show up to work on December 20, 21, or 22, 2010, and he did not notify anyone at State Auto of his absence. On December 22, 2010, Sullivan sent appellant an e-mail informing him that State Auto had terminated his employment based on appellant's insubordination and his "apparent job abandonment." (R. 65, exhibit No. 27, at 1.)

{¶ 19} On October 12, 2011, appellant filed a complaint ("the first complaint") against appellees alleging they discriminated against him on the basis of his national origin and retaliated against him. During the discovery phase, the trial court issued a protective order to deny appellant's request for the personnel files of other employees other than Hopkins. Appellant voluntarily dismissed the first complaint. On February 4, 2013, appellant refiled an identical complaint, again asserting claims for national origin discrimination and retaliation.

{¶ 20} On August 28, 2013, appellant filed a motion to compel discovery seeking an order from the trial court requiring appellees to produce the personnel files of Hopkins as well as those of other similarly situated employees of State Auto and any information regarding any EEOC or Ohio Civil Rights Commission ("OCRC") complaints lodged against State Auto in the past ten years. In an October 7, 2013 decision and entry, the trial court granted appellant's motion to compel in part, provided that the case is subject to the same protective order issued in the discovery phase of the litigation of the first complaint, and that the parties execute an agreed protective order for the pendency of the current litigation. The trial court denied appellant's motion to the extent he sought information related to any charges of discrimination filed with the EEOC or OCRC against State Auto in the past ten years.

{¶ 21} On October 18, 2013, the parties filed a mutually agreed stipulation and protective order stating appellant is not "entitled to discovery of any personnel files, personnel documents or personnel information for any non-party employee of State Auto." (R. 45, Agreed Stipulation and Protective Order, at 2.) Appellees did, however, provide appellant with a chart listing the names of all other business analysts along with their ethnicity, annual salary, performance review rating, and any pay raise given in the form of percentage change.

{¶ 22} On December 2, 2013, appellees filed a motion for summary judgment arguing there were no genuine issues of material fact related to any of appellant's claims and appellees were therefore entitled to judgment as a matter of law. Appellant responded with a memorandum in opposition to appellees' motion for summary judgment filed December 30, 2013. Appellant did not request more time to conduct

additional discovery under Civ.R. 56(F) before responding to appellees' motion for summary judgment.

{¶ 23} In a February 18, 2014 decision and entry, the trial court granted appellees' motion for summary judgment, concluding there remained no genuine issue of material fact related to any of appellant's claims.  Appellant timely appeals.

## II. Assignments of Error

{¶ 24} Appellant assigns two assignments of error for our review:

> 1. The trial court erred in granting Defendant-Appellees' Motion for Summary Judgment regarding Appellant's claims for discrimination based on national origin and hostile work environment harassment which includes retaliation; thus genuine issues of material fact remain to be litigated.
>
> 2. The trial court erred in its decision to grant Appellant's Motion to Compel in Part Only, which prevented Appellant from obtaining personnel files of similarly situated non-party business analysts and EEOC and OCRC complaints against the Defendant-Appellees, which are relevant to Appellant's claims of discrimination and retaliation.

## III. First Assignment of Error – Summary Judgment

{¶ 25} In his first assignment of error, appellant argues the trial court erred when it granted appellees' motion for summary judgment.  More specifically, appellant argues there remain genuine issues of material fact as to whether appellees discriminated against him based on his national origin and whether appellees retaliated against him for exercising his protected right to complain about discrimination.

{¶ 26} An appellate court reviews summary judgment under a de novo standard. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist.1995); *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588 (8th Dist.1994).  Summary judgment is appropriate only when the moving party demonstrates (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor.  Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 27} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). However, the moving party cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims. *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997). Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. *Dresher* at 293; *Vahila* at 430; Civ.R. 56(E).

## A. National Origin Discrimination

{¶ 28} Appellant's complaint asserts a claim for national origin discrimination based on R.C. Chapter 4112. R.C. 4112.02(A) states:

> It shall be an unlawful discriminatory practice * * * [f]or any employer, because of the race, * * * religion, * * * [or] national origin * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

Additionally, R.C. 4112.99 authorizes civil actions for relief for violations of R.C. Chapter 4112. Ohio courts look to the guidance of federal case law interpreting Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq., to examine state employment discrimination claims. *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723, ¶ 15. Title VII jurisprudence places the burden on the plaintiff to establish discrimination.

{¶ 29} To prevail in an employment discrimination case, the plaintiff must prove discriminatory intent which may be proven to be either direct or indirect evidence. *Dalton v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 13AP-827, 2014-Ohio-2658, ¶ 26, citing *Gismond v. M&T Mtge. Corp.*, 10th Dist. No. 98AP-584 (Apr. 13, 1999). " '[A] plaintiff may establish a prima facie case of * * * discrimination directly by presenting

evidence, of any nature, to show that an employer more likely than not was motivated by discriminatory intent.' " *Refaei v. Ohio State Univ. Hosp.*, 10th Dist. No. 10AP-1193, 2011-Ohio-6727, ¶ 12, quoting *Mauzy v. Kelly Servs., Inc.* 75 Ohio St.3d 578 (1996), paragraph one of the syllabus. "Alternatively, a plaintiff may establish a prima facie case of discrimination indirectly through the first part of the *McDonnell Douglas* three-part, burden-shifting approach, to create an inference of discriminatory intent." *Id.*, citing *Mauzy*; *Bucher v. Sibcy Cline, Inc.*, 137 Ohio App.3d 230, 239 (1st Dist.2000), citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under the latter approach, a plaintiff must demonstrate by a preponderance of the evidence that (1) he was a member of a protected class, (2) he suffered an adverse employment action, (3) he was qualified for the position, and (4) comparable, non-protected persons received more favorable treatment. *Refaei* at ¶ 12, citing *Saha v. The Ohio State Univ.*, 10th Dist. No. 10AP-1139, 2011-Ohio-3824, ¶ 47, citing *Clark v. City of Dublin*, 10th Dist. No. 01AP-458 (Mar. 28, 2002).

{¶ 30} Once a plaintiff establishes a prima facie case of discrimination, a rebuttable presumption shifts the burden to the defendant to "articulate clearly a legitimate, nondiscriminatory reason for the adverse action" to support a finding that unlawful discrimination was not the cause of the challenged employment action. *Id.* at ¶ 13, citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510 (1993). The burden on appellees here is one of production, as a " 'defendant need not prove a nondiscriminatory reason' " for the adverse employment action, " 'but need merely articulate a valid rationale.' " *Id.*, quoting *Williams v. Akron*, 107 Ohio St.3d 203, 2005-Ohio-6268, ¶ 14.

{¶ 31} If the employer carries its burden, the burden shifts back to the plaintiff to demonstrate that the reason the employer articulated for taking the adverse employment action is mere pretext for discrimination. *Id.* at ¶ 14, citing *Boyd v. Ohio Dept. of Mental Health*, 10th Dist. No. 10AP-906, 2011-Ohio-3596, ¶ 28, citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

{¶ 32} It is undisputed that appellant is a member of a protected class and was qualified for the position. Appellant contends he suffered four distinct adverse employment actions: (1) when Hopkins created a work chart in October 2009 for the business analysts he supervised; (2) when State Auto reclassified appellant from Business

Analyst to Business Analyst I; (3) when Hopkins did not award appellant a raise in 2009 and 2010; and (4) when State Auto terminated appellant's employment. Appellees assert all of appellant's claims fail because some of these actions are not sufficient to constitute adverse employment actions, because appellant is unable to identify any comparable, non-protected employees who received better treatment, or because appellees articulated a valid, nondiscriminatory rationale for each of these actions.

## 1. The October 2009 Work Chart

{¶ 33} Appellant first argues the 2009 work chart Hopkins prepared indicated appellant would not be assigned any new projects in 2010 and that this work chart constituted an adverse employment action. The parties agree Hopkins created the work chart in 2009 and that the chart indicated a 0 percent value for appellant in each month of 2010. Appellees argue, however, that appellant mischaracterizes the work chart and that it did not constitute an adverse employment action.

{¶ 34} In general, an adverse employment action "is a materially adverse change in the terms and conditions of the plaintiff's employment." *Canady v. Rekau & Rekau, Inc.*, 10th Dist. No. 09AP-32, 2009-Ohio-4974, ¶ 25, citing *Michael v. Caterpillar Financial Servs. Corp.*, 496 F.3d 584, 593 (6th Cir.2007). An adverse employment action includes any " ' "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." ' " *Id.*, quoting *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir.2007), quoting *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). An employee's unhappiness or resentfulness about an employment action does not necessarily render the occurrence an actionable adverse action. *Id.*, citing *Primes v. Reno*, 190 F.3d 765, 767 (6th Cir.1999). "Employment actions that result in mere inconvenience or an alteration of job responsibilities are not disruptive enough to constitute adverse employment actions." *Id.*, citing *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir.2004).

{¶ 35} The undisputed evidence in the record indicates the work chart was a projection of the anticipated future availability of the business analysts under Hopkins' supervision to take on new projects in 2010, not an indication that any given business analyst would or would not be assigned a new project. Hopkins intended the work chart

be used as a planning tool, not a schedule of assigned work.  The "zero-percent" values were intended to indicate that appellant did not have any work assignments projected to continue into 2010, meaning appellant would be available for new assignments. Appellant agreed in his deposition that the work chart did not have any material affect on the terms and conditions of his employment, and he agreed that he consistently had work assigned to him throughout 2010.  Thus, the creation of the work chart was not significant enough to constitute a materially adverse change in the terms and conditions of appellant's employment because, as appellant admitted in his deposition testimony, it had no bearing on appellant's actual work assignments in 2010.  *See Canady* at ¶ 25 (noting "[n]ot everything that makes an employee unhappy or resentful is an actionable adverse action").  Reasonable minds could only come to one conclusion, that the creation of the work chart was not an actionable adverse employment action.

**2. Reclassification of Position**

{¶ 36} Appellant next argues his reclassification to the position of Business Analyst I was an adverse employment action.  Appellees respond that the reclassification was merely a title clarification.  The evidence in the record indicates appellant's reclassification occurred as part of a company-wide change to the business analyst position.  It is undisputed that appellant did not suffer any change in salary, benefits, work hours, or project assignments as a result of this reclassification.  Though the assignment of "a less distinguished title" can constitute an adverse employment action, the undisputed facts here do not support such a conclusion.  *Dautartas v. Abbott Laboratories*, 10th Dist. No. 11AP-706, 2012-Ohio-1709, ¶ 52, citing *Peterson v. Buckeye Steel Casings*, 133 Ohio App.3d 715, 727 (10th Dist.1999).

{¶ 37} Appellant points to no evidence that Business Analyst I is a less-distinguished title than his pre-classification title of generic business analyst.  Appellant suffered no significant change in his employment status as a result of the reclassification. A reassignment unaccompanied by significantly different responsibilities does not rise to the level of an adverse employment action.  *Refaei* at ¶ 38, citing *Burlington Industries, Inc.* (noting a "bruised ego" is not enough, and "demotion without change in pay, benefits, duties, or prestige" is "insufficient" to constitute a significant change in employment

status).  Thus, reasonable minds could only conclude that appellant's job title clarification did not amount to an actionable adverse employment action.

**3. Denial of Pay Raise**

{¶ 38} Next, appellant asserts Hopkins' failure to award appellant a raise in both 2009 and 2010 were discriminatory adverse employment actions.  Generally, the denial of a pay raise qualifies as an adverse employment action.  *Canady* at ¶ 27.  Appellees respond that this argument fails because appellant was unable to identify any similarly situated employees who received better treatment than appellant.  However, we need not definitively determine whether appellant was able to identify other comparable employees because even if appellant successfully proved the existence of other similarly situated employees, appellees offered a legitimate, nondiscriminatory reason for appellant's treatment.

{¶ 39} Appellees explained that appellant did not receive a raise due to his mediocre job performance and the fact that his salary was already near the top end of the salary range for business analysts at State Auto.  According to appellees' undisputed evidence, appellant negotiated a high starting salary of $80,000 per year when he joined State Auto as a staff business analyst in 2007.  At the time he began his staff position, the upper limit of the salary range for a business analyst was $82,883.  When appellant first became eligible for a raise, his salary was already 14 percent above the mid-point for all business analysts, while his performance review for 2008 reflected his performance only "meets" expectations rather than "somewhat exceeds" or "exceeds" expectations.

{¶ 40} Appellant again did not receive a raise in 2010, but appellees again responded that appellant did not receive a raise due to poor performance and an already high salary.  Appellant's performance evaluation for the 2009 year fell from "meets" expectations to only "somewhat meets" expectations.  Additionally, State Auto reclassified its business analysts in 2010, and appellant was designated a Business Analyst I.  The top end of the salary range for Business Analyst I was $73,388.  Despite appellant's reclassification, State Auto did not reduce appellant's salary to fall within this range.  Both because appellant's performance evaluation indicated a drop in State Auto's satisfaction with appellant and appellant's salary was already $6,612 above the top end for his reclassified position, appellees did not award appellant a raise in 2010.

{¶ 41} Appellees' articulated reasons for denying appellant a raise in 2009 and 2010 because of an already high salary and poor job performance are sufficient, nondiscriminatory reasons to carry appellees' burden in the second step of the *McDonnell Douglas* test. *See Canady* at ¶ 27 (employer's stated reason that employee did not receive a pay raise because of a poor rating on a performance review is sufficient evidence to carry the employer's burden to articulate a legitimate, nondiscriminatory reason for the adverse employment action).

{¶ 42} Because appellees carried their burden of articulating a legitimate, nondiscriminatory explanation for denying appellant a raise, the burden then shifts back to appellant to demonstrate appellees' stated reasons were mere pretext. Though appellant argued the denial of his pay raise must be motivated by national origin discrimination, he does not support that assertion with any specific evidence in the record. Appellant "cannot satisfy this burden by merely denying the existence of a legitimate, nondiscriminatory reason when, in fact, the record contains such a reason." *Canady* at ¶ 28. Thus, based on the evidence in the record, reasonable minds could only conclude that appellant failed to demonstrate appellees' reasons for denying appellant a raise were mere pretext. *Id.*

**4. Termination**

{¶ 43} Lastly, under his national origin discrimination argument, appellant asserts his termination was an adverse employment action motivated by discrimination against him based on his national origin. In general, termination from employment qualifies as an adverse employment action. *Canady* at ¶ 25, citing *Tepper* at 515. Similar to appellant's pay raise argument, we need not determine whether appellant was able to establish that other similarly situated employees were not terminated because appellees offered a legitimate, nondiscriminatory reason for appellant's termination.

{¶ 44} Here, appellees offered a legitimate, nondiscriminatory reason for appellant's termination: appellant's repeated acts of insubordination and job abandonment. Appellant stated in his deposition that he understood he was expected to attend the meetings and answer questions about his job performance. He further stated he understood he was going to be disciplined for his insubordination. Appellees expressly warned appellant that his failure to attend the December 20, 2010 meeting would be

deemed insubordination and grounds for termination. Appellant did not attend the meeting, nor did he provide an excuse or explanation for his failure to come to work. Appellant's undisputed insubordination and job abandonment are valid, nondiscriminatory reasons for appellant's termination.

{¶ 45} Since appellees carried their burden to show appellant's termination was not intentional discrimination, the burden then shifts back to appellant to show pretext. Appellant does not point to any Civ.R. 56 evidence creating an issue of fact as to whether his termination was mere pretext for discrimination. Because appellant is unable to prove any of his stated grounds amount to employment discrimination on the basis of national origin, the trial court did not err in grating appellees summary judgment on that claim.

## B. Retaliation

{¶ 46} Appellant next argues the trial court erred when it granted appellees' motion for summary judgment as to his claim for retaliation. Appellees urge this court to not address appellant's argument related to his retaliation claim because appellant failed to brief the issue and instead attempted to "incorporate by reference" the arguments he made in the trial court.

{¶ 47} We agree with appellees that appellant's arguments regarding retaliation and hostile work environment are not properly before this court. App.R. 16(A)(7) states an appellant shall include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary." Pursuant to App.R. 12(A)(2), a reviewing court may disregard an assignment of error when a party "fails to argue the assignment separately in the brief."

{¶ 48} Though appellant argues the facts he alleged in support of his national origin discrimination claim would also support his retaliation claim, he provides no legal argument related to his retaliation claim. Instead, appellant's brief only states that appellant incorporates by reference the arguments made in his memorandum in opposition to appellees' motion for summary judgment made in the trial court below "should these arguments become necessary." (Appellant's Brief, 27.) " 'The Rules of Appellate Procedure do not permit parties to "incorporate by reference" arguments from

other sources.' " *McNeilan v. The Ohio Univ. Med. Ctr.*, 10th Dist. No. 10AP-472, 2011-Ohio-678, ¶ 7, quoting *Cutin v. Mabin*, 8th Dist. No. 89993, 2008-Ohio-2040, ¶ 9, quoting *Kulikowski v. State Farm Mut. Auto. Ins. Co.*, 8th Dist. No. 80102, 2002-Ohio-5460, ¶ 55. An appellate court may reject an argument on appeal when the appellant fails to cite any legal authority in support of that argument. *Legacy Academy for Leaders v. Mt. Calvary Pentecostal Church*, 10th Dist. No. 13AP-203, 2013-Ohio-4214, ¶ 20, citing *State ex rel. Capretta v. Zamiska*, 135 Ohio St.3d 177, 2013-Ohio-69, ¶ 12, citing *In re Application of Columbus S. Power Co.*, 129 Ohio St.3d 271, 2011-Ohio-2638, ¶ 14.

{¶ 49} Moreover, even if the court considered appellant's retaliation claim, it would fail.

{¶ 50} R.C. 4112.02(I) provides it is an unlawful discriminatory practice "[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, * * * or participated in any manner in any" R.C. Chapter 4112 "investigation, proceeding, or hearing." A plaintiff may prove a retaliation claim through either direct or circumstantial evidence that an unlawful retaliation motivated the employer's adverse employment action. *Nebozuk v. Abercrombie & Fitch Co.*, 10th Dist. No. 13AP-591, 2014-Ohio-1600, ¶ 39, citing *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 543 (6th Cir.2008); *Reid v. Plainsboro Partners, III*, 10th Dist. No. 09AP-442, 2010-Ohio-4373, ¶ 55.

{¶ 51} The burden-shifting framework set forth in *McDonnell Douglas* applied above to the discrimination claim also applies to the retaliation claim. *Imwalle* at 544. Under that framework, the plaintiff bears the burden of establishing (1) he engaged in protected activity, (2) the employer knew of his participation in protected activity, (3) the employer engaged in retaliatory conduct, and (4) a causal link exists between the protected activity and the adverse employment action. *Nebozuk* at ¶ 40, citing *Imwalle* at 544.

{¶ 52} If the plaintiff successfully establishes a prima facie case, the burden shifts to the employer to " 'articulate some legitimate nondiscriminatory reason for' " its employment action. *Id.* at ¶ 41, quoting *Carney v. Cleveland Hts.-Univ. Hts. City School Dist.*, 143 Ohio App.3d 415, 429 (8th Dist.2001), citing *Burdine* at 252-53. If the

employer carries its burden, the burden shifts back to the plaintiff to prove the employer's articulated reason is mere pretext for discrimination. *Id.*, citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

{¶ 53} As we noted above, appellant fails to articulate a clear argument in support of his retaliation claim. From what we can discern from his brief, appellant points to the same four allegedly adverse employment actions he argued in support of his national origin discrimination claim to support his retaliation claim. For reasons similar to those we articulated above, summary judgment was appropriate on appellant's retaliation claim as well. Appellant was either unable to demonstrate those actions were significant enough to constitute adverse employment actions, or here retaliatory conduct, or appellant was unable to carry his burden to demonstrate that appellees' articulated reasons for the actions were mere pretext. Additionally, appellant does not identify anything in the record demonstrating a causal link between the alleged adverse employment actions and the protected activity of appellant's internal complaints and his EEOC claims. Based on our review of the entire record, the trial court did not err in concluding summary judgment was appropriate in favor of appellees on appellant's retaliation claim.

{¶ 54} Thus, because the trial court did not err in granting appellees' motion for summary judgment for all of appellant's stated claims, we overrule appellant's first assignment of error.

## IV. Second Assignment of Error – Motion to Compel

{¶ 55} In his second assignment of error, appellant asserts the trial court erred when it denied in part appellant's motion to compel. More specifically, appellant argues the trial court erred when it denied appellant's request to compel production of (1) information related to charges of discrimination filed by employees other than appellant, and (2) the personnel files of employees of State Auto not a party to this action.

{¶ 56} An appellate court reviews a trial court's resolution of discovery matters under an abuse of discretion standard. *Jacobs v. Jones*, 10th Dist. No. 10AP-930, 2011-Ohio-3313, ¶ 55, citing *State ex rel. Keller v. Columbus*, 164 Ohio App.3d 648, 2005-Ohio-6500, ¶ 39 (10th Dist.), citing *State ex rel. The V. Cos. v. Marshall*, 81 Ohio St.3d 467, 469 (1998). An abuse of discretion implies the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

## A. Other Charges of Discrimination

{¶ 57} Appellant first argues the trial court abused its discretion when it denied his motion to compel to the extent he sought information about any charges of discrimination filed with the EEOC or OCRC against State Auto in the past ten years.

{¶ 58} Pursuant to Civ.R. 26(B)(1), parties "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." The party seeking the discovery of certain information "must demonstrate relevance to the underlying subject matter in order for discovery to be permissible." *Dehlendorf v. Ritchey*, 10th Dist. No. 12AP-87, 2012-Ohio-5193, ¶ 20. While the scope of relevancy in discovery is broad, it is not without limits. *Id.*, citing *Freeman v. Cleveland Clinic Found.*, 127 Ohio App.3d 378, 388 (8th Dist.1998). Where the information sought will not reasonably lead to the discovery of admissible evidence, the documents are not relevant. *Id.*, citing *Tschantz v. Ferguson*, 97 Ohio App.3d 693, 715 (8th Dist.1994).

{¶ 59} Appellant argues that he needed the information regarding other possible claims of discrimination filed by other employees because these documents are "reasonably calculated to [lead] to the discovery of admissible evidence in this case." (Appellant's Brief, 36.) However, appellant's claims of national origin discrimination and retaliation do not require proof of other claims of discrimination filed by other employees of State Auto, even if any such other claims existed. Appellant needed only to prove he personally received disparate treatment because of his protected class, not that State Auto may have also discriminated against other employees. Thus, because appellant did not establish the relevance of the other potential EEOC or OCRC claims, the trial court did not abuse its discretion in denying appellant's motion to compel with respect to those documents.

## B. Personnel Files of Non-Party Employees

{¶ 60} Appellant also argues the trial court erred when it denied his motion to compel the personnel files of non-party employees of State Auto.

{¶ 61} Appellant argues he needed the personnel files in part to help him identify other similarly situated employees who were treated differently than him. However, appellees had already provided appellant with a summary of the pertinent information regarding other State Auto employees, including ethnicity, position, salary information,

raise information, and performance review scores. Appellant does not articulate what other information he hoped to obtain were he granted access to the complete personnel files. *See State ex rel. Doe v. Register*, 12th Dist. No. CA2008-08-081, 2009-Ohio-2448, ¶ 41 (finding trial court did not abuse its discretion in denying motion to compel duplicate discovery requests where the information sought was documentation and information the other party had previously provided). Thus, we do not agree with appellant that it was error for the trial court to deny discovery of the personnel files in favor of the privacy interests of non-party employees of State Auto.

{¶ 62} Because the trial court did not abuse its discretion in denying appellant's motion to compel documents related to other EEOC or OCRC claims against State Auto or in denying appellant's request for other personnel files, we overrule appellant's second assignment of error.

## V. Disposition

{¶ 63} Based on the forgoing reasons, the trial court did not err in granting appellees' motion for summary judgment, and the trial court did not abuse its discretion in denying in part appellant's motion to compel discovery. Having overruled appellant's two assignments of error, we affirm the decision and entry of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and BROWN, JJ., concur.